ROGERS, APPELLEE, *v.* ANCHOR MOTOR FREIGHT, INC., APPELLANT.

(No. 7683—Decided March 2, 1953.)

*Mr. Robert N. Gorman* and *Mr. Robert R. Boone,* for appellee.

*Messrs. Pogue, Helmholz, Culbertson & French,* for appellant.

*Per Curiam.* As the plaintiff was the only person present at the instant his automobile collided with the defendant's trailer, the proof of the circumstances of that collision rests entirely on his testimony. Whether an issue of fact was presented also rests upon the same foundation.

The trial court held that an issue of fact determining liability was presented, and submitted the issues to the jury.

The jury resolved the issues in favor of the plaintiff and returned a verdict of $45,000 in his favor, upon which judgment was entered. It is from that judgment that this appeal on questions of law is taken.

At various stages of the proceedings in the trial court and in the appropriate ways, the defendant, appellant herein, raised the question of the legal sufficiency of the plaintiff's evidence and all the evidence for submission to the jury and to sustain the verdict and judgment. The trial court overruled all defendant's motions, and the claim that error was committed in so doing is the principal ground urged on this appeal for the reversal of the judgment. However, two specific alleged errors are pointed out, which, it is claimed, necessitate a reversal of the judgment and a remand for a new trial, even assuming that it should be determined that the evidence is sufficient to carry the case to the jury. We shall consider these claims of error before passing to a consideration of the assertion that the evidence shows as a matter of law that no liability exists.

1. On cross-examination of the plaintiff, he was asked this question:

"So when you say that the equipment of the defendant was 65 or 75 feet in front of you when the other car left your lane of traffic you didn't have your car under such control that you could stop within the assured clear distance ahead?"

The court sustained an objection to this question.

The distance of 65 to 75 feet was the distance between plaintiff's automobile and defendant's trailer when the third automobile ceased to obstruct the plaintiff's vision so that he was able to see defendant's trailer. The plaintiff's case depended on his ability

to avoid the collision after he saw the trailer, and he had testified fully on both direct and cross-examination on that subject. There was no occasion to have recourse to a hypothetical assured clear distance ahead. Without stopping to consider the form of the question and whether it would be competent in other circumstances, we conclude that, in view of the plaintiff's very full testimony directed to the circumstances, as they existed according to his testimony, no possible prejudice could have resulted to the defendant because of this ruling.

2. It is urged that the verdict is excessive.

The plaintiff is a physician and surgeon and was 59 years of age at the time he was injured. He had graduated from medical school in 1920 and had practiced since then in Cincinnati, and, at the time of this occurrence, derived an income in excess of $20,000 annually from his practice. According to the evidence, his injuries had rendered him incapable of pursuing his profession, which incapacity will continue for the remainder of his life, resulting in the entire loss of his income from the pursuit of his profession. There was evidence of other loss in addition to the physical injuries, including pain and suffering.

The judgment is large in amount, but we are unable to say that it is excessive.

3. We come now to the assigned error upon which the defendant places the most emphasis, that is, that the plaintiff's own testimony shows that he was operating his automobile at a speed greater than would permit him to stop it within the assured clear distance ahead, in violation of Section 6307-21, General Code, and, that, therefore, plaintiff's testimony shows that he was guilty of contributory negligence as a matter of law.

In order to determine the validity of this claim, it is necessary to consider the plaintiff's testimony.

The plaintiff testified that at about midnight on December 3, 1950, he left his country home near New Richmond in his automobile, destined for his home in Cincinnati. He was unaccompanied. He was proceeding westwardly on the north side of U. S. route 52, which at the point of this collision is 22 feet wide. He had proceeded less than two miles and there was apparently no traffic to the west of him as he approached a point in route 52 where its south edge is intersected by Palestine road and the north edge by Iglauer's drive, when suddenly the lights of an automobile appeared 250 to 300 feet westwardly and diagonally across his lane of travel. Whether any part of this automobile was in plaintiff's lane of travel when he first became aware of its proximity, or whether only the beam from its lights was in such lane of travel is not clear. At any rate, the automobile was in his lane of travel almost at once. At that time the plaintiff was traveling 45 miles per hour, but when he saw the automobile lights diagonally across his path, he pressed on the brake and slowed down to 35 miles per hour or less. The automobile lights changed from a diagonal position to a position straight down the plaintiff's path, headed directly toward him. The plaintiff testified that he could have stopped his automobile going at 35 or 45 miles per hour before it would have reached the location of this third automobile, but that if the third automobile continued toward him down his path, there would have been a head-on collision notwithstanding; so instead of stopping or slowing down, he swerved his automobile about five feet to his right, hoping thereby to avoid the collision at the risk of being obliged to steer his automobile onto the berm and possibly into the ditch on his right side of the road. In so doing he kept his gaze upon the edge of the road and thereby avoided being blinded by the lights of the oncoming automobile. It so happened that

the operator of the third automobile, just before reaching the plaintiff's automobile, suddenly veered to his right, and the two automobiles passed each other without contact. The third automobile continued down the highway, and the identity of the operator has not been discovered.

It is manifest that this untoward incident created an emergency containing elements of imminent peril, and that while it continued the plaintiff was completely preoccupied in attempting to avoid the peril.

As soon as the plaintiff passed this automobile which he had barely avoided, and which had obstructed his forward view, he was immediately confronted with the defendant's unlighted trailer-truck, 65 to 75 feet ahead of him, parked on the north edge of the highway and extending about five feet into his lane of travel, which truck he then saw for the first time. He had his foot on the brake and turned as far as he could to the left in an effort to avoid colliding with the truck, but was unable to do so.

We believe the foregoing is a fair summary of the essential facts to which the plaintiff testified. His credibility rested with the jury. It saw fit to believe him, and there is nothing in the record that would justify this court in disturbing the jury's conclusion.

That the defendant was negligent is not seriously disputed. There were no lights of any sort upon its truck at the time. There were no flares or fusees in the highway. The truck was unattended. The gasoline had been exhausted, and the operator had gone back to New Richmond to replenish it.

The defendant's contention is that the plaintiff violated Section 6307-21, General Code, in that he operated his automobile at a speed greater than would permit him to stop it within the assured clear distance ahead.

On the other hand, the plaintiff contends that, at the

inception of this incident, he could have stopped his automobile within the assured clear distance ahead; that the sudden and unexpected entry of the automobile going in the opposite direction into the assured clear distance, the emergency which it created, and his preoccupation in avoiding colliding with it made it impossible for him to see the defendant's truck until the intervening automobile passed; and that then he was so close to the truck that it was impossible to avoid colliding with it.

We have examined the cases in which Section 6307-21, General Code, has been construed and applied. All of them recognize that a sudden and unexpected intervention of a new agency within the assured clear distance ahead affects the application of the statute and may relieve the plaintiff from the charge of negligence per se in colliding with another object in the highway.

In the procession of cases in which the statute has been construed, the rule has been stated, restated and refined as varying circumstances have pointed out the desirability of a more comprehensive definition. Perhaps the latest definition is found stated in negative form in the syllabus of the case of *McFadden, Admx.,* v. *Elmer C. Breuer Transportation Co.,* 156 Ohio St., 430, 103 N. E. (2d), 385, as follows:

"The question of whether the operator of a motor vehicle was negligent in failing to comply with the 'assured-clear-distance-ahead' rule contained in Section 6307-21, General Code, is not presented to the trier of the facts where there is no substantial evidence (1) that the object with which such operator collided was located ahead of him in his lane of travel, and (2) that such object was reasonably discernible, and (3) that the object was (a) static or stationary, or (b) moving ahead of him in the same direction as such operator, or (c) came into his lane of travel within the

assured clear distance ahead at a point sufficiently distant ahead of him to have made it possible, in the exercise of ordinary care, to bring his vehicle to a stop and avoid a collision.''

As stated in the second paragraph of the syllabus of *Erdman* v. *Mestrovich,* 155 Ohio St., 85, 97 N. E. (2d), 674, the rule of the statute is:

''Violation of the assured-clear-distance-ahead rule consists of the operation of a motor vehicle at a greater speed than will permit the operator thereof to bring it to a stop within the assured clear distance ahead, unless such assured clear distance ahead is, without his fault, suddenly cut down or lessened by the entrance within such clear distance and into his path or lane of travel of an obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith.''

Applying the rule announced in these cases to the evidence in the case at bar causes us to reach the conclusion that an issue of fact, and not of law, is presented as to plaintiff's conduct and required submission of such issue to the jury for its determination.

We think it is conclusively established that a motorist can free himself of a charge of violation of the statute and of negligence per se in colliding with an object ahead of him in the highway by proof that, without his fault, a sudden, unexpected situation developed that could not be anticipated by the exercise of reasonable foresight, and by reason thereof his assured clear distance ahead was lessened and that before he could extricate himself from such situation, and because thereof, he collided with the object ahead. Having thereby freed himself of the charge of negligence per se, he is entitled to recover, or, at least, to have the issue of fact resolved, provided he also prove that the defendant was negligent, about which, in the

case at bar, there could be no doubt if the jury believed the plaintiff.

In *Matz, Admr.*, v. *J. L. Curtis Cartage Co.*, 132 Ohio St., 271, 7 N. E. (2d), 220, it was held, as stated in the syllabus, that:

"The driver of a motor vehicle, who, after nightfall, without his fault, is forced, by an oncoming automobile, to the side of the highway and into an unlighted parked truck, with which otherwise he would not have collided, cannot be said as a matter of law to be guilty of violating the 'assured clear distance' provision of Section 12603, General Code. (Paragraph three of the syllabus in *Kormos* v. *Cleveland Retail Credit Men's Co.*, 131 Ohio St., 471, approved and followed.)

"Section 614-86, General Code, applies only to motor transportation companies and does not confer upon the Public Utilities Commission power to regulate the use of public highways by the general public."

An examination of the printed record in the *Matz* case discloses that in all essentials the facts are indistinguishable from those in the case at bar. Defendant's counsel point out that in the *Matz case* the intervening automobile was only 20 to 25 feet away when it came into the lane in which Matz was driving, thereby requiring Matz to turn abruptly; that the lights from the intervening automobile did not interfere with Matz's view ahead; that it required 20 to 25 feet for Matz to stop his automobile at the speed at which he was going; and that he was so close to the defendant's unlighted truck, parked near the curb to his right, that he was unable to avoid colliding with it. He admits, as he must, that evidence of those facts presented a case for submission to the jury, but contends that the evidence in the case at bar does not. Let us compare the evidence in the two cases.

It is true that the automobile that intervened and

cut down the plaintiff's assured clear distance ahead was 250 to 300 feet from him when the plaintiff first saw the rays of light diagonally across his lane of travel, but the plaintiff could not anticipate at that time that the operator of that automobile would enter his lane of travel and proceed straight down it toward him until a collision was barely avoided by each turning to his right. While there is no estimate in feet of how close the two automobiles were to each other when the intervening automobile left the plaintiff's lane of travel, it is fairly to be inferred that they were very close and perhaps less than 20 to 25 feet apart. But, assuming that the distance was greater, the plaintiff, operating his automobile at a speed that would permit him to stop it within the assured clear distance, had a right to concern himself with the only peril of which he was aware. In doing so he was acting in an emergency which had suddenly cut down his assured clear distance and made it impossible for him to see the defendant's truck because of the obstruction.

Counsel point out that Matz's view ahead was not obstructed, whereas the plaintiff's view was obstructed by the lights. Counsel is mistaken when he says the lights obstructed the plaintiff's view. He testified that it was the body of the automobile that obstructed his view and that he was not blinded by the headlights because his sight was focused on the edge of the highway toward which he was turning and toward which he was required to turn in order to avoid the approaching automobile. If the *Matz case* and the case at bar differ in this respect, it would seem to us that the evidence in the case at bar presents valid reasons for the plaintiff not knowing of the presence of defendant's unlighted truck and, therefore, that he had no reason to regulate his conduct on an assumption that it was present, whereas, Matz, knowing or being charged with the

duty of knowing, should have taken it into consideration.

As to the difference in distance from the parked truck when the intervening obstruction was removed and the plaintiff became aware of the parked truck in his lane of travel, we think its only significance is its bearing on whether the plaintiff could have avoided colliding with the truck by the exercise of reasonable care. The plaintiff testified that he was unable to bring his automobile to a stop within the distance or avoid the truck by turning. Our attention has been called to no countervailing evidence. Certainly, this evidence presented an issue of fact as to whether the plaintiff had exercised reasonable care to avoid the collision after the emergency had ended and he had become aware of the defendant's unlighted truck in his path.

Counsel point out also that in the case at bar the plaintiff chose to continue on at 35 miles per hour for nearly 200 feet and turn to his right to avoid the collision, whereas Matz had no choice. While we do not think it mattered, the Matz record does not bear this out. Matz was not necessarily required by the situation to come into collision with the defendant's automobile. As the facts disclosed, he veered farther to the right than was necessary in order to avoid the oncoming automobile, and one of his contentions was that if the truck had had lights on it, he would have seen it and would not have veered so far to the right. In the case at bar the plaintiff testified that he weighed two alternatives, namely, to stop in his lane of travel or to turn to his right, and concluded that as the oncoming automobile was proceeding directly toward him in his lane of travel, turning out was to be preferred to stopping. Whether his decision was such as would have been made after deliberation may be debatable, but the

law does not hold a person to such a standard where choices are required to be made instantly in the presence of a sudden emergency.

On the whole case, we conclude that the evidence presented issues of fact to be submitted to the jury, and that they were presented fairly under instructions free from error.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

MATTHEWS, P. J., and HILDEBRANT, J., concur.

Ross, J., dissenting. This case presents an appeal on questions of law from a judgment of the Common Pleas Court of Hamilton County in favor of the plaintiff, entered upon a verdict awarding the plaintiff $45,000 as compensation for personal injuries received by him when an automobile driven by him collided with a truck operated by defendant.

As the writer views the appeal and record of the trial court, only two alternatives are presented, either to affirm the judgment or render final judgment for the defendant in pursuance of appropriate action taken by the defendant in the trial court. All assignments of error predicated upon grounds other than the claim that the trial court should have rendered judgment in favor of defendant are resolved in favor of the plaintiff. Such assignments of error have been considered fully in reaching such conclusion.

The defendant's assertion that it is entitled to final judgment here is predicated upon its claim that the plaintiff was guilty of negligence as a matter of law in violating Section 6307-21, General Code, by driving his automobile at a speed greater than would permit him to stop within the assured clear distance ahead.

The burden of proof to establish such contention was on the defendant.

The plaintiff relied upon the existence of an intervening cause excusing compliance with the statute. The duty to show such excuse rests on the plaintiff.

In determining whether the defendant is entitled to final judgment, the testimony of the plaintiff given at the trial constitutes a controlling consideration in that if statements made at that time show that he is not entitled to recover, final judgment against him is required, regardless of any other evidence which may be in his favor. *Winkler* v. *City of Columbus,* 149 Ohio St., 39, 77 N. E. (2d), 461. The evidence of what happened immediately prior to and at the time of the collision is almost entirely confined to plaintiff's testimony, as he alone was present, and only he can testify as to what occurred.

From plaintiff's own testimony at the trial, it appears that he was a physician and surgeon and occupied a home a mile or two to the east of New Richmond, Ohio; that he left his home about midnight on December 3, 1950, and proceeded westwardly on route 52 toward Cincinnati, Ohio; that after rounding a curve in the road, he observed the light of an automobile approaching him from the west; and that this automobile, proceeding eastwardly, at the time he first saw it, was some 250 to 300 feet away. The evidence shows conclusively that such point was where the New Palestine road joins route 52 from the south, and that directly opposite such juncture is a driveway to the Iglauer property. The plaintiff was unable to say whether the eastbound automobile came north out of the New Palestine road or not. He stated that it ''instantly'' went across route 52 into the north or westbound lane of traffic in which he was lawfully proceeding, and then ''instantly'' returned to its proper south or eastbound lane of traffic.

Plaintiff stated that he then saw the eastbound car proceeding toward him in his westbound lane of traffic, that he was afraid to stop, but that he reduced his speed from 45 to 35 miles an hour and drove his car to the north side of his lane of travel so that he could "take the ditch" if it was necessary to avoid a collision. A careful reading of all plaintiff has stated on this phase of the matter indicates that the eastbound car simply swerved into the west lane of traffic and then out again, and it is reasonable to suppose that the driver of the eastbound car became aware of the approach of plaintiff's automobile simultaneously with plaintiff's awareness of its presence and that that driver was as anxious to avoid a collision as the plaintiff. The evidence shows also, without doubt, that defendant's unlighted truck, with no fusees or flares burning in its vicinity, was parked in the westbound lane of traffic directly in plaintiff's path, just a few feet to the east of where such eastbound car came into plaintiff's view. Plaintiff stated that the truck completely "occluded and obscured Iglauer's drive."

Plaintiff testified further that when he saw such eastbound automobile and when he was proceeding at a rate of 45 miles per hour, "he was in my lane on the north side of the road, in my lane of travel, and I concluded then that the best thing was not to stop but to pull over and if necessary to take the ditch on the upper side to keep from a head-on collision. And I did pull over and had my foot on the brake all the time. And I moved from where I was approximately at the middle—traffic middle line of the road; I moved over to the far side of the upper lane of travel, that is north some, probably, I should say, maybe five feet, and while I was moving that distance over he again instantly turned his car and moved back over in the south lane and proceeded on towards New Richmond."

Plaintiff stated he was not blinded by the lights of

the eastbound car, but that he could not see what was beyond it and did not become aware of the unlighted truck in his path until he had again flicked on his bright lights when he was some 65 to 75 feet distant from the truck and too close to avoid a collision. Plaintiff stated that his car, a 1947 Buick sedan, was in perfect running condition, that the brake mechanism of the automobile was in perfect condition, and that the surface of the road was dry and the night clear. No lights other than those on plaintiff's car and those of the eastbound car were present on route 52. Plaintiff stated he was perfectly familiar with route 52, having traveled it for some 14 years.

Plaintiff stated further in answer to a question on cross-examination as to whether he assumed a clear path ahead of him:

"I wasn't making any assumption at that time. *I knew nothing about anything that lay beyond me.*" (Emphasis added.)

Plaintiff stated that when he slowed from 45 to 35 miles an hour, and when he was some 250 to 300 feet from the eastbound car when it first became visible to him, that he "could have stopped" but thought it best to proceed to the north side of the road. He stated: "Fortunately when I turned a little in my lane he turned to the other and he did clear out from in front of me." And again, he testified that he (the plaintiff) traveled 175 feet after he saw the eastbound car and before it passed him. It will, therefore, be noted that the plaintiff testified that he traveled 175 feet while the eastbound car traveled 75 feet.

Plaintiff's testimony on this point is as follows:

"Q. Now, I don't know whether I understand your answer or not, doctor. Do I understand you to mean that after you saw this machine that you say was coming toward you that you traveled 175 feet before it passed you? A. I traveled 175 feet before it passed

me, before it cleared out from in front of me. While I was traveling that 175 feet that car was moving towards me all the time. I was eating up speed and eating up time, and that car was moving all the time, and that car had been traveling about 75 feet while I had been traveling 175 feet. I was slowing down and had my foot on the brake all the time.

"Q. In other words, after you saw it, as I understand you, you drove about 175 feet in your lane of traffic before this car cut over to the eastbound lane? A. South side of the road, yes.

"Q. The south side of the road? A. That's correct.

"Q. Now, up to that time were you blinded by the lights of that machine? A. No, because I was watching the road and the lights were bright, but I was watching the road and the side of the road and the berm so as to keep in my lane of traffic. Wasn't blinded.

"Q. But so far as what lay beyond that machine you were blinded, were you not? A. I couldn't see over the car.

"Q. You couldn't see beyond those lights? A. I couldn't see over those lights or over the automobile. I knew there was an automobile in front of me because the lights of an automobile were in front of me. You assume that."

Counsel for the defendant tried to get a statement from plaintiff indicating what distance was required to enable plaintiff to stop when traveling at 35 miles per hour, but plaintiff was most indefinite on this point. Plaintiff did state, however:

"A. I couldn't stop it in 75 feet—65—75 feet, whatever that distance might have been.

"Q. Well, could you tell us in what distance you could have—A. I could have stopped my car up the road, as I told you—and I had about 175 feet or 250 feet, and I could have stopped my car any time along there. Of course, after I first noticed him I could

have stopped my car, but he might have run into me. But how long and how far it takes to stop a car at different speeds I'm not a mathematician or a genius. I don't know.''

Plaintiff testified further that his high lights cast a beam 200 feet ahead, which would reveal any discernible object.

At the time the eastbound car moved into the westbound lane of traffic, the assured clear distance ahead applicable to plaintiff was between 250 to 300 feet and at that point, and within some 200 feet, plaintiff could have stopped his car.

Plaintiff stated that the truck was parked a very few feet east of the point where such assured clear distance ahead was so limited, although it could not be seen by reason of the intervention of the oncoming car. This car ''instantly'' resumed its eastbound lane, and yet plaintiff proceeded on not knowing what was beyond the point where it entered the westbound lane of traffic. The plaintiff asserts that he had a right to assume that such west lane of traffic, over which he was proceeding, was free of obstruction.

The case of *Hangen, a Minor,* v. *Hadfield,* 135 Ohio St., 281, 20 N. E. (2d), 715, is cited in support of such contention. The syllabus of that case is as follows:

''1. Under the language of Section 12603, General Code, providing that no person shall drive any motor vehicle in and upon any public road or highway at a rate of speed greater than will permit him to bring it to a stop within the assured clear distance ahead, the questions of proximate cause and negligence on the part of such driver must, under proper circumstances, be submitted to the jury.

''2. A driver who has failed to comply with these provisions of Section 12603, General Code, may excuse such failure and avoid the legal imputation of negligence per se by establishing that, without his fault, and

because of circumstances over which he had no control, compliance with the law was rendered impossible. (Paragraph 3 of the syllabus in the case of *Kormos* v. *Cleveland Retail Credit Men's Co.,* 131 Ohio St., 471, approved and followed.)

"3. These provisions of Section 12603, General Code, do not require the driver of a motor vehicle approaching the crest of a hill on a public highway to anticipate that his proper path will be obstructed by another automobile driven in the opposite direction in a manner contrary to law."

Any statement of law in a syllabus must be read framed within the purview of the facts involved in the case. *Baltimore & Ohio Rd. Co.* v. *Baillie,* 112 Ohio St., 567, 148 N. E., 233.

In the *Hangen case, supra,* as set out in paragraph three of the syllabus, the plaintiff had just passed over the crest of a hill and started down when he was confronted with a car proceeding toward him in his lane of traffic. The facts are stated more fully at page 285, as follows:

"In the instant case the speed of the two automobiles was approximately the same as that of the cars involved in the *Skinner* and *Gumley cases.* But here the analogy ends, and the four cited cases are readily distinguishable from the one now before the court. In this case the collision occurred about ten o'clock in the morning. The day was clear, and the surface of the highway was dry. As the plaintiff drove eastward over the crest of a hill he suddenly observed the defendant's automobile approaching toward the west on the plaintiff's, or south, side of the road. According to the plaintiff's evidence the defendant's car was about 250 feet away and directly in the plaintiff's path. The plaintiff immediately applied his brakes and steered his car still farther to his right until its right wheels were on the south or right berm. As this was

done the plaintiff's car began to skid and turn. As it continued to skid and turn it veered to the plaintiff's left and toward the middle of the highway. In the meantime the defendant likewise was attempting to steer his car to his right or proper side of the road. He applied the brakes, and his car, too, began to skid and turn. The exact point of the collision is in dispute. The defendant insists that he had turned to his left or south side of the road when he overtook a boy on a bicycle, but that he had regained his right or north side of the highway by the time the collision occurred. This is denied by the plaintiff. He admits that when his car turned crosswise on the road one wheel projected a foot or two north of the middle, but insists that only the right front wheel of the defendant's car had regained the north side of the road. The plaintiff says further that he saw no boy on a bicycle.''

The facts involved in the *Hangen case* were in dispute, and, in any event, entirely dissimilar to those here presented.

In *Smiley* v. *Arrow Spring Bed Co.,* 138 Ohio St., 81, 33 N. E. (2d), 3, 133 A. L. R., 960, however, Judge Hart, in the opinion, stated at page 88:

''In this connection, by way of extenuation or exoneration, it has been suggested in certain cases that the driver of an automobile in operating his car has a right to assume, until he has notice to the contrary, that others on the highway will obey the law. Under the ordinary rules of negligence this is true, but in the light of the requirements of the statute under consideration, the rule above referred to has little, if any, application. *Linquist* v. *Thierman, supra* [216 Iowa, 170]. The statute is a safety regulation and imposes upon the operator of a motor vehicle at all times the unqualified obligation to be able to stop his car within the distance that discernible objects may be seen. By force of the statute the motorist may therefore as-

sume nothing that is not assured to him by the range of his vision.''

In the *Smiley case* the facts involved were:

''After dark on December 3, 1936, the defendant's truck being operated in a westerly direction on highway route No. 422 near Parkman, Ohio, became disabled and was parked without lights on the north side of the highway. While the truck was thus located, plaintiff operating his automobile in the same direction behind the truck collided with it, demolishing the automobile and injuring the plaintiff, for which damages and injuries he seeks recovery.

''Plaintiff brought this action in the Municipal Court of Cleveland charging the defendant with negligence in parking the truck on the highway in violation of Sections 12614-3 and 6310-1, General Code. There was some dispute as to the exact location of the truck on the highway at the time of the accident, but this is unimportant in the application of the law to this case. On the other hand, the defendant charged the plaintiff with contributory negligence as a matter of law in operating his automobile at a speed of from 30 to 35 miles per hour and in violating the assured-clear-distance statute, Section 12603, General Code, as a result of which his automobile collided with defendant's truck. The plaintiff sought to avoid the operation of this statute by claiming that defendant's truck was parked 30 feet beyond the crest of a hill where it was not visible to the plaintiff until his automobile had passed over the hill and that he was partially blinded by the lights of another vehicle approaching from the opposit direction, which vehicle, at the moment of the collision, was passing defendant's truck.''

To say the least, it would seem that the dogmatic statements in the syllabus of *Hangen, a Minor,* v. *Hadfield, supra,* are qualified by the *Smiley case,* wherein the judgment of the Court of Appeals, sustaining a

verdict for plaintiff, was reversed and judgment entered by the Supreme Court for the defendant.

It seems clear that the Supreme Court, as the law stands now, does not hold in favor of an unqualified assumption that the rightful lane of a motorist is free from obstruction by one violating the rules of due care. If such an assumption is warranted, then the obligations imposed by Section 6307-21, General Code, are abrogated, for it is just that assumption that is negatived by the statute.

Obviously, the defendant was negligent, and such negligence was a contributing cause to plaintiff's injuries. It may be admitted also that the driver of the eastbound car was negligent, and that such negligence was a contributing cause of plaintiff's injuries; also, that the questions presented here are whether the plaintiff was guilty of a violation of the statute, and whether such a violation was a contributing cause of his injuries. If the trier of the facts is permitted to determine whether the plaintiff is guilty of negligence in failing to adjust his speed to the assured clear distance within his view, then the specific rule of the statute is abrogated in favor of the common-law rule which it modifies.

The case of *Matz, Admr.,* v. *J. L. Curtis Cartage Co.,* 132 Ohio St., 271, 7 N. E. (2d), 220, is relied upon as an authority conclusively resolving the issues presented in favor of the plaintiff, in that it is claimed that the *Matz case,* under conditions similar to those prevailing here, allocates determination of the issues presented to the jury rather than the court, placing responsibility on the jury to determine whether, under all the circumstances involved, the plaintiff used appropriate care.

Paragraph one of the syllabus in the *Matz case* is:

"The driver of a motor vehicle, who, after nightfall, without his fault, is forced, by an oncoming automo-

bile, to the side of the highway and into an unlighted parked truck, with which otherwise he would not have collided, cannot be said as a matter of law to be guilty of violating the 'assured clear distance' provision of Section 12603, General Code. (Paragraph three of the syllabus in *Kormos* v. *Cleveland Retail Credit Men's Co.,* 131 Ohio St., 471, approved and followed.)''

The facts involved in the *Matz case* are stated in the opinion, at page 274, as follows:

''Plaintiff testified on the trial that he was driving east on Mentor avenue at the rate of thirty miles per hour, with his left front wheels about one foot south of the center of the street; that his bright headlights illuminated the road about 250 feet ahead and lighted it up from the center to the south curb; that he was following, sixty feet behind another eastbound car; that two westbound automobiles approached him, driving midway between the center and north curb of the roadway; that after the eastbound car had passed these two automobiles, the rear westbound automobile drove out of line and two or three feet over onto the plaintiff's side of the roadway; that at this time the plaintiff was about 20 to 25 feet from this westbound automobile; that he was obliged to turn suddenly and unexpectedly to the right to avoid a head-on collision with this car; that at the speed he was traveling it would require 25 to 30 feet to stop; that he could not stop before hitting the rear end of the defendant's truck; and that the lights of the oncoming cars in no way interfered with his view to the east along his side of the road.

''The plaintiff's claim of negligence was that there were no lights burning on defendant's truck and no flares were placed on the road. There was evidence tending to prove that the place of the accident was lighted to some extent by street lights and that the lights of the westbound cars illuminated the street to

some extent. There was testimony to the effect that the night was dry and clear.''

Again, the law pronounced must be read in view of the facts involved. See *Baltimore & Ohio Rd. Co.* v. *Baillie, supra.*

It seems clear that the facts involved in the *Matz case* and the instant case are radically different when compared. In the *Matz case* the plaintiff-administrator, who was driving the car in which his wife was killed, was following ''60 feet behind another car,'' so that the distance was a constant ''assured clear distance'' for him. In the instant case, taking into consideration the braking quality of his car and the temporary intervention of the eastbound car, plaintiff had an ''assured clear distance ahead'' of some 250 to 300 feet when that distance was determined by the intervention of the eastbound car. However, plaintiff stated that the intervention was ''instantly'' removed and that he was not blinded by the oncoming lights.

In the *Matz case* it appears that the intervening car crossed into the path of the plaintiff's car when but 20 to 25 feet from it, and, as far as the facts show, continued on in the plaintiff's lane of traffic; and that the plaintiff in that case had no choice but to immediately swerve out of the path of the intervening car, resulting in an *immediate* collision with the defendant's truck.

A case in which excuse for compliance with the statute is developed is *McFadden, Admx.,* v. *Elmer C. Breuer Transportation Co.,* 156 Ohio St., 430, 103 N. E. (2d), 385. The facts are stated in the second paragraph of the syllabus as follows:

''Where, in an action for the wrongful death of the operator of an automobile which collided with a roll of steel, 34 inches in height, 3 feet, 11 inches in diameter and weighing over 13,000 pounds, which dropped from defendant's truck, which was going in the opposite direction, into the path of the operator of the automobile,

the defendant truck owner admits negligence proximately contributing to the collision but asserts as a defense that the operator of the automobile was guilty of contributory negligence in that he violated the provision of Section 6307-21, General Code, commonly referred to as the assured-clear-distance-ahead rule, the burden is upon the defendant, in order to make a prima facie case of such contributory negligence, to present substantial evidence (a) that the object with which such operator's vehicle collided had been in his path or lane of travel before the collision at a sufficient distance ahead of him to have made it possible for him, in the exercise of ordinary care, to stop such vehicle and avoid a collision, and (b) that such object was a reasonably discernible one.''

In the first paragraph of the syllabus, the court laid down the law as applicable to the statute. It is stated therein:

''The question of whether the operator of a motor vehicle was negligent in failing to comply with the 'assured-clear-distance-ahead' rule contained in Section 6307-21, General Code, is not presented to the trier of the facts where there is no substantial evidence (1) that the object with which such operator collided was located ahead of him in his lane of travel, and (2) that such object was reasonably discernible, and (3) that the object was (a) static or stationary, or (b) moving ahead of him in the same direction as such operator, or (c) came into his line of travel within the assured clear distance ahead at a point sufficiently distant ahead of him to have made it possible, in the exercise of ordinary care, to bring his vehicle to a stop and avoid a collision.''

In the opinion, at page 434, this statement is amplified:

''The decisions of this court have established that the operator of a motor vehicle violates this statute if

he drives at such speed that he collides with a reasonably discernible object (1) which is located ahead of him in his lane of travel and which object is (a) static or stationary (*Skinner* v. *Pennsylvania Rd. Co.,* 127 Ohio St., 69, 186 N. E., 722; *Watt* v. *Jefferson Trucking Co.,* 130 Ohio St., 99, 196 N. E., 887; *Kormos* v. *Cleveland Retail Credit Men's Co.,* 131 Ohio St., 471, 3 N. E. [2d], 427; *Smiley* v. *Arrow Spring Bed Co.,* 138 Ohio St.; 81, 33 N. E. [2d], 3, 133 A. L. R., 960), or (b) moving ahead of him in the same direction (*Gumley, Admr.,* v. *Cowman,* 129 Ohio St., 36, 193 N. E., 627; *Higbee Co.* v. *Lindemann,* 131 Ohio St., 479, 3 N. E. [2d], 426; *Bickel* v. *American Can Co.,* 154 Ohio St., 380, 96 N. E. [2d], 4), or (2) which appears in his path at a sufficient distance ahead of him to give him time, in the exercise of ordinary care, to bring his automobile to a stop and avoid a collision (*Klever* v. *Reid Brothers Express, Inc.,* 151 Ohio St., 467, 86 N. E. [2d], 608; *Erdman* v. *Mestrovich,* 155 Ohio St., 85, 97 N. E. [2d], 674; *Sherer* v. *Smith, a Minor,* 155 Ohio St., 567, 99 N. E. [2d], 763)."

Another case mentioned in the consideration of this case is that of *Erdman* v. *Mestrovich,* 155 Ohio St., 85, 97 N. E. (2d), 674, where a pedestrian was struck by the defendant's automobile at a street crossing. The defendant claimed that the plaintiff suddenly darted in front of his automobile and that he could not avoid striking him. The trial court refused to charge on the assured-clear-distance-ahead rule. The Court of Appeals reversed, and was reversed by the Supreme Court. In the *Erdman case* the evidence was in conflict.

Still another case involving the rule is that of *Sherer* v. *Smith, a Minor,* 155 Ohio St., 567, 99 N. E. (2d), 763. In the opinion, at page 570, it is stated:

"This court held, in effect, in the recent case of *Erdman* v. *Mestrovich,* 155 Ohio St., 85, 97 N. E. (2d),

674, that the assured-clear-distance-ahead rule has no application in a situation where a person, motor vehicle or object suddenly enters the path of another motor vehicle from the side, unless such person, motor vehicle or object comes into the view of the operator of the other motor vehicle at a point sufficiently distant ahead to enable such operator, in the exercise of ordinary care, to stop his vehicle and avoid a collision.

''Applying such holding to the instant case wherein plaintiff and defendant entered the intersection from different directions, each claiming he proceeded on a green light, and where both of them testified that neither saw the automobile of the other until a second before the crash, we are of the opinion that the trial court herein properly removed from the consideration of the jury the 'assured-clear-distance-ahead' provision of Section 6307-21, General Code.''

The instant case, it is apparent, is dissimilar to many of the cases considered, in that in the latter are present direct conflicts as to the facts involving the collision. There is no divergence in the evidence in the instant case as to what occurred immediately prior to and at the time of the collision, for, as has been said, these facts are established by the plaintiff's testimony. There is thus presented squarely to the court the duty of determining the applicability of the statutory rule and the relation of a violation of the rule to plaintiff's injuries.

In the instant case also, there is not involved a collision with an intervening agency. It must be apparent that, since the eastbound car became visibile to the plaintiff at a point, in effect, identical with the location of the truck with which plaintiff's automobile collided, he had ample time to control his automobile, so that he would neither have collided with the approaching vehicle or the truck which he did not see or take precaution to see. Had plaintiff's automobile collided

with the eastbound automobile, swerving in and out of his lane of traffic, a different problem would have been presented. The emergency, if it existed, was · eliminated almost as soon as it was created, and yet the plaintiff, not knowing what was beyond the point where his vision was temporarily obscured, proceeded on at a speed which manifestly did not permit him to stop when the lane before him became clear to his vision. The existence of the eastbound car shortened his assured clear distance ahead and required consistent action on the part of plaintiff to bring himself within the protection of the rule. The undisputed facts—disclosed by his own testimony—were that plaintiff continued at a speed that made it impossible for him to stop at the point where he ceased to have an assured clear distance ahead, and the point where his path was blocked by the defendant's truck. The considered necessity for movement to the north side of the road did not relieve him from the constant requirement to regulate his speed to the known distance of safety. It does not seem that there can be any question that such failure was a contributory cause of his own injuries.

Aside from the requirements of the statute, the facts involve much the same principle found in the so-called "step in the darkness cases" such as *McKinley* v. *Niederst,* 118 Ohio St., 334, 160 N. E., 850; and *E. Kahn's Sons Co.* v. *Ellswick,* 122 Ohio St., 576, 172 N. E., 668. To proceed onward, not knowing what was in his path, seems to be conclusive evidence of contributory negligence, justifying final judgment against the plaintiff. Judgment should be so rendered accordingly.