Hart, J.
 

 The important question in this case is: Did the plaintiff in operating his automobile at the time of collision with the defendant’s truck violate Section 12603, General Code, which provides that “no person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured
 
 *83
 
 clear distance ahead”? If he did violate this statute, his contributory negligence in that respect precludes his recovery in this action.
 

 In 1928, before the adoption of the assured-clear-distance-ahead statute in this state, this court in the ease of
 
 Tresise
 
 v.
 
 Ashdown, Admr.,
 
 118 Ohio St., 307, 160 N. E., 898, held that: “In an action to recover damages for injuries claimed to have been sustained by the driver of a motor vehicle resulting from a collision with another motor vehicle parked at the right side of the highway at night with no light in the rear or other warning thereof, an instruction to the jury, that operation of such motor vehicle at such a rate of speed that the driver cannot stop within the distance that an obstruction in the highway could be seen by his own headlights constitutes negligence
 
 per se,
 
 is erroneous.”
 

 At-the next session of the Legislature in the spring of 1929, the “assured clear distance ahead” requirement was for the first time incorporated in the laws of this state by the amendment of Section 12603, General Code, effective July 22, 1929. (113 Ohio Laws, 283.) The first case to reach this court calling for the application of this statutory requirement was that of
 
 Skinner
 
 v.
 
 Pennsylvania Rd. Co.,
 
 127 Ohio St., 69, 186 N. E., 722, wherein this court affirmed the judgment of the Court of Appeals, in reversing the judgment of the trial court for refusal to direct a verdict against the plaintiff where the automobile in which he was riding was driven in the nighttime into a freight train standing across the highway. In the later cases of
 
 Gumley, Admr.,
 
 v.
 
 Cowman,
 
 129 Ohio St., 36, 193 N. E., 627, decided in 1934, and
 
 Kormos
 
 v.
 
 Cleveland Retail Credit Men’s Co.,
 
 131 Ohio St., 471, 3 N. E. (2d), 427, decided in 1936, wherein the drivers of automobiles in the nighttime had crashed into motor vehicles on the highway ahead of them, this court held that each automobile driver had violated the statute in operating his
 
 *84
 
 automobile at a speed greater than would permit him to bring it to a stop within the distance at which he could see a discernible object obstructing his path. ■This court in those cases also held that the assuredelear-distance-ahead provision of the statute is a specific requirement of law, a violation of which constitutes negligence
 
 per se.
 
 The £ £ assured clear distance ahead,” as used in the statute, must be the distance or space between the motor vehicle of the motorist and any discernible obstruction or any limit of vision ahead of him on the highway. For example, if a train of cars is standing across the highway immediately ahead of the motorist, the distance between himself and the train of cars is the assured clear distance ahead. If his view is cut off by darkness, by a curve in the highway, or by the crest of a hill, the distance between him and the point where his vision ends or is out off is the assured clear distance ahead. The requirement of the statute is that the motor vehicle be so operated that, at any instant, it' can be stopped within such assured clear distance ahead.
 

 Before the enactment of the statute a question of fact was presented as to whether a motorist who collided with a truck or other obstruction at rest on the highway was guilty of negligence proximately causing his injury. The statute was amended to remove the uncertainty attendant upon the appraisal of the conduct of the motorist in this regard, and to place upon him the burden of doing a specific thing, namely, to drive his car at such speed as will enable him to stop and avoid a collision with discernible objects within the distance ahead assured to him by the range of his vision. The purpose of the amendment to the statute was undoubtedly to prevent accidents on the highways, and it is just as important to prevent them at night, in foggy or rainy weather, and on hills or around curves, as it is to prevent them in daylight and on level roads. To permit courts and juries in each par
 
 *85
 
 tieular case to interpret differently the meaning of the plain term ‘ ‘ assured clear distance ahead, ” is in effect to abolish the statute and its requirement by judicial amendment, and to place automobile drivers in the same position they were in before the statute was amended to its present form. Clearly, Section 12603, General Code, is a safety measure which to accomplish its purpose must be applied according to its clear and unambiguous language.
 

 The states of Ohio, Michigan, Pennsylvania and Iowa each have assured-clear-distance statutes which are identical in terms and language. The construction of this statute becomes important to motorists of Ohio not only because they are affected by the law in this state, but because they are subject to the same rule when operating motor vehicles, as they do, to the extent of thousands of miles annually in the contiguous states of Michigan and Pennsylvania. Furthermore, it is highly desirable that the statute be given a similar interpretation by the courts of the several states wherein it is in force.
 

 The Supreme Court of Iowa in the case of
 
 Lindquist
 
 v.
 
 Thierman,
 
 216 Iowa, 170, 248 N. W., 504, 87 A. L. R., 893, defines and explains the statute of that state as follows:
 

 “Reading the Iowa statute under consideration in the light of the modern trend of legislation relating to automobiles * * # the phrase ‘within the assured clear distance ahead’ may be defined readily. * * # It is evident that the words ‘within the assured clear distance ahead,’ as used in the statute, signify that the operator of the automobile, when driving at night as well as in the day, shall at all times be able to stop his car within the distance that discernible objects may be seen ahead of it. To illustrate, a driver of an automobile at night, as well as in the day, in order to stop within the assured clear distance ahead, must be able to timely discern a man, a horse, a cow, or another vehicle; whereas
 
 *86
 
 such driver of the automobile might or might not discern a thin wire or a small stake in time to stop within the assured clear distance ahead. If, then, the driver of an automobile, because of the defective lights, cannot see more than 10 feet ahead of his car, he must so control the same that he can stop it if necessary within such radius of the lights. * * # The definition above adopted requires that the operator of the automobile shall at all times be able to stop his car within the distance that discernible objects may be seen. Therefore, under the many cases above cited, the operator of an automobile must thus control his car, even though there are unlighted vehicles on the highway.” See, also,
 
 Hart
 
 v.
 
 Stence,
 
 219 Iowa, 55, 257 N. W., 434, 97 A. L. R., 535.
 

 The Supreme Court of Pennsylvania in the case of
 
 Stark
 
 v.
 
 Fullerton Trucking Co.,
 
 318 Pa., 541, 179 A., 84, construes the Pennsylvania statute in the following language: The statute implies “that the driver will always be carefully watching so much of the road as is included within that ‘ assured clear distance ahead, ’ and will always keep his car so under control that he can stop it within that distance.
 
 * * *
 
 the requirement is fixed and unchangeable. There is no excuse for a failure to obey the statutory requirement unless the obstacle in front is for the first time in the driver’s view, after the car has passed the point where the ‘assured clear distance ahead,’ quoad that point, has been reached and passed, and the obstacle is then too close to be avoided. This can never be where, as here, the dangerous object is standing still before the outer limit of the ‘assured clear distance ahead’ has been reached, and continues in that position. It is no answer to say, as appellant seems to attempt here, that decedent had no reason to expect a stalling on the highway of the automobiles into which he crashed. The statute was passed to protect life and limb; decedent was bound to guard, to the extent stated, against that
 
 *87
 
 and every other possibility, and the statute must be construed and applied to further that purpose.”
 

 The Supreme Court of Michigan in the case of
 
 Ruth
 
 v.
 
 Vroom,
 
 245 Mich., 88, 91, 222 N. W., 155, 62 A. L. R., 1528, in construing the Michigan statute, said: “It is not enough that a driver be able to begin to stop within the range of his vision, or that he use diligence to stop after discerning an object. The rule makes no allowance for delay in action. He must, on peril of legal negligence, so drive that he can and will discover an object, perform the manual acts necessary to stop, and bring the car to a complete halt within such range. If blinded by the lights of another car so he cannot see the required distance ahead, he must, within such distance from the point of blinding, bring the car to such control that he can stop immediately, and, if he cannot then see, shall stop.” See, also,
 
 Perkins
 
 v.
 
 Great Central Transport Corp.,
 
 262 Mich., 616, 247 N. W., 759.
 

 Notwithstanding the strict construction given the assured-clear-distance statutes by this court, and by the supreme courts of other states in the cases just cited, this court in the cases of
 
 Gumley, Admr.,
 
 v.
 
 Cowman, supra, Kormos
 
 v.
 
 Cleveland Retail Credit Men’s Co., supra,
 
 and
 
 Hangen
 
 v.
 
 Hadfield,
 
 135 Ohio St., 281, 20 N. E. (2d), 715, suggested that situations may arise and collisions occur under circumstances which provide legal excuse to the person charged with the violation of the statute. In this connection, however, this court has specifically held that in order to enjoy the benefit of the legal excuse and to avoid the legal imputation of negligence
 
 per se,
 
 the motorist must establish that, without, his fault, and because of circumstances over which he had no control, compliance with the law was rendered impossible.
 
 Hangen
 
 v.
 
 Hadfield, supra.
 

 The composite rule then may be stated as follows:
 

 To comply with the assured-elear-distance-ahead
 
 *88
 
 provision of Section 12603, General Code, the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop within the distance between his motor vehicle and a discernible object obstructing his path or line of travel, unless such assured clear distance ahead is suddenly cut down or lessened, without his fault, by the entrance within such clear distance ahead and into his path or line of travel of some obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith.
 
 Spencer
 
 v.
 
 Taylor,
 
 219 Mich., 110, 188 N.
 
 W.,
 
 461;
 
 West Construction Co.
 
 v.
 
 White,
 
 130 Tenn., 520, 172, S. W., 301;
 
 Steele
 
 v.
 
 Fuller,
 
 104 Vt., 303, 158 A., 666;
 
 Wosoba
 
 v.
 
 Kenyon,
 
 215 Iowa, 226, 243 N. W., 569;
 
 Kisling
 
 v.
 
 Thierman,
 
 214 Iowa, 911, 243 N. W., 552;
 
 Greenland
 
 v.
 
 City of Des Moines,
 
 206 Iowa, 1298, 221 N. W., 953;
 
 Peckinpough
 
 v.
 
 Engelke,
 
 215 Iowa, 1248, 247 N. W., 822. See list of cases in 87 A. L. R., 898.
 

 The greatest difficulty and confusion in the application of the assured-clear-distance-ahead rule arises in the determination of what circumstances may constitute an exception to it. As indicated in preceding paragraphs of this opinion, such exceptions must arise out of sudden emergencies which change the situation for the operator of the motor vehicle, but which do not arise by reason of his own failure or neglect to comply with the rule. In this connection, by way of extenuation or exoneration, it has been suggested in certain cases that the driver of an automobile in operating his car has a right to assume, until he has notice to the contrary, that others on the highway will obey the law. Under the ordinary rules of negligence this is true, but in the light of the requirements of the statute under consideration, the rule above referred to has little, if any, application.
 
 Lindquist
 
 v.
 
 Thierman, supra.
 
 The statute is a safety regulation and imposes upon the operator of a motor vehicle at all times the unqualified
 
 *89
 
 obligation to be able to stop Ms car within the distance that discernible objects may be seen. By force of the statute the motorist may therefore assume nothing that is not assured to him by the range of his vision.
 

 It is apparent that the exception to the statutory rule, in contrast with the rule itself, cannot be stated in exact terms. It can be stated only relatively and to a large extent by terms of inclusion within and exclusion from the rule, depending upon the circumstances of the case. For this reason a few instances of judicial determination will serve to clarify and define the exception to the assured-clear-distance rule.
 

 Under the following circumstances the statutory rule of assured clear distance ahead was applied:
 

 Where a motorist in the nighttime drove his automobile into a train of cars across a highway on which he was travelling
 
 (Skinner
 
 v.
 
 Pennsylvania Rd. Co., supra; Capelle
 
 v.
 
 Baltimore & Ohio Rd. Co.,
 
 136 Ohio St., 203, 24 N. E. [2d], 822); where a motorist in operating an automobile behind a moving truck, which stopped without warning, crashed into the rear of it
 
 (Higbee Co.
 
 v.
 
 Lindemann,
 
 131 Ohio St., 479, 3 N. E. [2d], 426); where a motorist, in operating his automobile on a foggy, rainy morning, crashes into a slowly moving truck on the highway ahead of him
 
 (Gumley, Admr.,
 
 v.
 
 Cowman, supra);
 
 where a motorist crashed into an unlighted parked car which was covered with dirt, or was painted yellow or the color of the pavement
 
 (Kormos
 
 v.
 
 Cleveland Retail Credit Men’s Co., supra; Ellis
 
 v.
 
 Bruce,
 
 217 Iowa, 258, 252 N. W., 101;
 
 Dalley
 
 v.
 
 Midwestern Dairy Products Co.,
 
 80 Utah, 331, 15 P. [2d], 309); where a motorist ran head-on into a street curb and a pole beyond at a jog in the street on a dark, misty night
 
 (Greenland
 
 v.
 
 City of Des Moines,
 
 supra); where a motorist in operating his automobile in darkness, or through fog, smoke or rain collided with a discernible object on the highway
 
 (Skinner
 
 v.
 
 Pennsylvania Rd. Co., supra; Bowmaster
 
 v.
 
 William
 
 
 *90
 

 H. DePree Co.,
 
 252 Mich., 505, 233 N. W., 395;
 
 Mason
 
 v.
 
 C. Lewis Lavine, Inc.,
 
 302 Pa., 472, 153 A., 754); where a motorist collided with a concrete mixer parked on highway on a misty night
 
 (Elrich
 
 v.
 
 Schwaderer,
 
 251 Mich., 33); where a motorist on a dark, rainy night, drove through a barrier into an opening in a road
 
 (Lauson
 
 v.
 
 Town of Fond du Lac,
 
 141 Wis., 57, 123 N. W., 629, 135 Am. St. Rep., 30, 25 L. R. A. [N. S.], 40); where a motorist on a misty night and on a slippery pavement collided with the rear of an unlighted truck standing on the highway between Bowling Green and Toledo
 
 (Perkins
 
 v.
 
 Great Central Transport Corp., supra
 
 [applying the Ohio statute]); where a car ahead cut out to avoid hitting a truck standing on the highway and the driver of an automobile following collided with the rear end of the truck
 
 (Moore
 
 v.
 
 United States Truck Co.,
 
 260 Mich., 56, 244 N. W., 228); where the driver of an automobile blinded by lights of another car approaching from the opposite direction collided with an unlighted vehicle on the driver’s path of travel
 
 (Lindquist
 
 v.
 
 Thierman, supra; Hart
 
 v.
 
 Stence, supra; Ruth
 
 v.
 
 Vroom, supra; Thompson
 
 v.
 
 Southern Michigan Transportation Co.,
 
 261 Mich., 440, 246 N. W., 174;
 
 Budnick
 
 v.
 
 Peterson,
 
 215 Mich., 678;
 
 Lett
 
 v.
 
 Summerfield & Hecht,
 
 239 Mich., 699, 214 N. W., 939;
 
 Haney
 
 v.
 
 Troost,
 
 242 Mich., 693, 219 N. W., 594;
 
 Spencer
 
 v.
 
 Taylor, 2
 
 19 Mich., 110, 188 N. W., 461;
 
 Gleason
 
 v.
 
 Lowe,
 
 232 Mich., 300, 205 N. W., 199;
 
 Halsaple
 
 v.
 
 Supts. of Poor,
 
 232 Mich., 603, 206 N. W., 529;
 
 Wosoba
 
 v.
 
 Kenyon,
 
 supra); where a driver’s view of a parked automobile with which he collided was cut off by a curve in the highway shortening the distance of view
 
 (Peckinpough
 
 v.
 
 Engelke, supra; Boylon
 
 v.
 
 Reliable Cartage Co.,
 
 258 Mich., 5, 242 N. W., 231); and where a motorist collided with a stalled or disabled car on the path or line of travel invisible because over the crest of a hill
 
 (Stark
 
 v.
 
 Fullerton Trucking Co., supra).
 

 Under the following circumstances the driver of the
 
 *91
 
 motor vehicle was legally excused from the application of the assured-clear-distance-ahead rule, and was held to the rule of due care under the circumstances:
 

 Where a motorist having the right-of-way at a street intersection collided with a motor vehicle attempting to cross the intersection at the same time
 
 (Morris
 
 v.
 
 Bloomgren,
 
 127 Ohio St., 147, 158, 187 N. E., 2;
 
 Blackford
 
 v.
 
 Kaplan,
 
 135 Ohio St., 268, 20 N. E. [2d], 522); where there was the entrance of a person or vehicle into the line of travel of-a motorist, cutting down his previous assured clear distance ahead, so that he had neither the space nor opportunity to stop his car before colliding with such person or vehicle
 
 (Matz, Admr.,
 
 v.
 
 J. L. Curtis Cartage Co.,
 
 132 Ohio St., 271, 7 N. E. [2d], 220); where a motorist in driving over the crest of a hill discovered an automobile moving toward him upon his side of the road, cutting down the distance between him and the automobile with which he collided (H
 
 angen
 
 v.
 
 Hadfield,
 
 supra); where a motorist in the nighttime, driving on the right inner lane of a multiple-lane highway, whose automobile lights illuminated that lane for the distance required by law and who drove at a speed which enabled him to stop within the range of his lights, collided with a car standing on the outer lane onto which he was suddenly forced by traffic coming from the opposite direction when so near to the standing car as to render it impossible for him to stop before striking it
 
 (Matz
 
 v.
 
 J. L. Curtis Cartage Co., supra; Gund
 
 v.
 
 Scott Transportation Co.,
 
 132 Ohio St., 387, 8 N. E. [2d], 149); where a motorist collided with an obstacle in the highway caused by the slipping and skidding of his car upon an undiscernible strip or patch of ice on the pavement immediately in front of the obstacle
 
 (Diederichs
 
 v.
 
 Duke,
 
 234 Mich., 136, 207 N. W., 874); and where a motorist drove into an unlighted ditch extending across the highway and not easily discernible
 
 (Owens
 
 v.
 
 Iowa County,
 
 186 Iowa, 408, 169 N. W., 388).
 

 
 *92
 
 In the instant case, the plaintiff seeks to avoid the application of the rule on the ground that the unlighted parked truck was located in his path of travel just over the crest of a hill which cut off his view of the truck ahead, and that he was blinded by the lights of an automobile coming from the opposite direction, which automobile was opposite the truck at the time of collision. There is á conflict in the evidence as to where the truck was parked and where the collision occurred in relation to the crest of the hill, but even if the parked truck was beyond the crest of the hill as claimed by the plaintiff, that furnished no excuse for his colliding with the truck. As has been shown from the adjudicated cases, the fact that the motorist’s view is limited by the crest of the hill does not warrant his driving at such speed as. to preclude him from stopping his car within the assured clear distance that may be afforded after he reaches the crest of the hill. Likewise, the interference with the view by the lights of automobiles approaching him from the opposite direction, does not constitute any excuse for failing to keep his car within control so that it may be stopped before colliding with an obstruction in front of him. The statute has been adopted by legislative action to secure safety in travel on the highways. So long as it remains in force and effect.it must be observed.
 

 The judgment of the Court of Appeals is reversed and final judgment rendered for appellant.
 

 Judgment reversed and final judgment for appellant.
 

 Weygandt, C. J., Matthias, Zimmerman and Bettman, JJ., concur.
 

 Turner and Williams, JJ., dissent.