Joseph CARUFEL, Plaintiff-Appellee,

v.

CHESAPEAKE AND OHIO RAILWAY COMPANY, Defendant-Appellant.

No. 14174.

United States Court of Appeals
Sixth Circuit.

Feb. 8, 1961.

Matthew Davison, Jr., Flint, Mich. (Gault, Davison & Bowers, Flint, Mich., on the brief), for appellant.

Robert B. Benton, Flint, Mich. (Beagle, Benton, Hicks & Fisher, Flint, Mich., on the brief), for appellee.

Before MARTIN, MILLER and CECIL, Circuit Judges.

CECIL, Circuit Judge.

This is an appeal by the Chesapeake and Ohio Railway Company from a judgment entered on a verdict in favor of Joseph Carufel, the appellee.

We will refer to the parties as plaintiff and defendant, as they were in the trial court.

The plaintiff was a truck driver and on or about the 2nd day of November, 1957, at approximately two o'clock in the morning, he was operating a G. M. C. tractor-trailer, in an easterly direction, on U. S. Highway 224, in Seneca County, about twelve miles east of Findlay, Ohio. At this point, the defendant's railroad crossed the highway at grade. When the plaintiff reached the crossing it was pre-empted by a train of one hundred sixty-seven cars, which was approximately one

and a half miles in length. The train was travelling at a speed of about twelve miles per hour. The plaintiff drove his tractor into the ninth car from the rear of the train and as a result of the collision received serious injuries, for which the jury returned a verdict in the sum of $75,000.

The railway company has double tracks which run generally north and south and cross the highway at the point of the collision at right angles. A grade approximately three to three and a half percent begins about four hundred feet west of the crossing, so that the tracks are about ten feet above the level road grade. There are no obstructions at the crossing and in the daytime or on a clear night, the visibility both ways along the tracks is almost unlimited. The crossing was marked by the standard wooden crossbuck signs required by statute. Sec. 4955.33 Ohio Revised Code. About five hundred fifty feet west of the crossing, there was placed, on the shoulder of the highway, a reflectorized advance warning disc sign. At this point, there was also a large reflectorized "X" on the pavement, extending practically all the way across the eastbound lane of the highway.

In addition to these signs there were either sodium or mercury vapor lights placed about eighteen feet above the tracks at the northeast and southwest corners of the intersection. Those lights were designed to illuminate not only the crossing itself but a train that might be on the crossing as well.

The plaintiff had travelled this highway a number of times and was familiar with the railroad crossing at the point of the collision. Although at the time of the accident he did not know exactly how close he was to the crossing, he knew he was in the vicinity of it. The night being foggy, he had planned to stop at a truck stop which he knew he was approaching and which he also knew to be east of the intersection in question.

There was a heavy fog overhanging parts of the highway and in travelling from Findlay to the place of the accident, the plaintiff had passed through several patches of fog which were about a mile in length. At the time of the accident, he had been driving in a dense fog for three or four miles. The plaintiff's tractor-trailer and load weighed approximately twenty-five tons. The evidence is that he had been travelling at a speed of about thirty miles per hour, until he reached the point of the grade, about four hundred feet from the crossing and that he then reduced his speed to twenty-seven or twenty-eight miles per hour; that he had vision for fifty or sixty feet ahead and that he could stop within the distance of his vision.

It is conceded that at the time of the accident the defendant railway company was complying with all statutory requirements.

Counsel for the plaintiff claimed that the crossing in question was an extraordinarily hazardous one and that the railroad company was negligent in not providing safety devices in addition to the statutory requirements. Section 4907.47 Ohio Revised Code provides that a railroad company is not required to use extra safeguards, except by order of the Public Utilities Commission. No order was ever made by the Commission.

There is evidence that it was characteristic of the area of this crossing to be subjected to heavy fogs, during the spring and fall, that the area is swampy and that it is not uncommon for dense fogs to overhang the tracks for a distance of fifteen miles up and down the tracks and a mile in width on each side of the tracks.

The extraordinary hazard, of which the plaintiff complains, is that the vapor lights, installed by the railway company as an extra safety precaution, fused with the fog and motorists' headlights and created a veil of some sort. It is apparently the theory of plaintiff's counsel that the plaintiff could not see through this veil but that he did not know that he could not see. In short, it is claimed that the defendant committed an act of negligence in installing the vapor lights.

In considering whether the crossing in question was an extra hazardous one, we

are concerned with the facts in this case. Did the vapor lights create a condition which obscured the plaintiff's vision and proximately cause his accident?

The rule governing the question of extra statutory warnings was stated in Hood v. New York, Chicago & St. Louis Rd. Co., 166 Ohio St. 529, 535, 144 N.E.2d 104, 109: " * * * a railroad is under no duty to provide extrastatutory warnings at a grade crossing, where not required to do so by any order of the Public Utilities Commission, if there is no substantial risk that a driver in the exercise of ordinary care may be unable to avoid colliding with a train that is being operated over the crossing in compliance with statutory requirements." As further indicated by the court (166 Ohio St. at page 536, 144 N.E.2d 104) not every claim for extrastatutory requirements can be submitted to a jury. If, in the first instance, the trial judge determines from the evidence that reasonable minds could not conclude that there was such a substantial risk, as stated in the rule, then the question should not be submitted to the jury.

We do not find any evidence to support plaintiff's claim that the vapor lights created any extraordinary hazard requiring extrastatutory safeguards, or that they caused his accident.

Dr. Richard Blackwell, an expert in problems of visibility, testified on behalf of the plaintiff. He gave a very interesting discourse on the subject of visibility in fog, but we do not find that he says but for the vapor lights the plaintiff could have seen the train. He testified that with a number of given factors one could compute visibility. He said: "This is a difficult computational job, and it takes pages of mathematics. Yet it can be done." Without having any of the necessary factors as they were on the night of the accident, he could not compute the visibility of the driver at the time of the collision. He further testified that the plaintiff's statements that he could see a white line along the side of the road, at fifty feet, could see white letters or white something ahead of him, but could not discern a black gondola car at thirty-five feet, were compatible and could occur under the laws of visibility in fog. This does not establish the extent of visibility on the night of the accident, nor does it furnish any evidence of negligence on the part of the defendant in installing the lights.

Aside from the failure of evidence to show that the accident was caused by a fusion of the lights and the fog, there is no evidence that the defendant could have reasonably foreseen that the vapor lights could have caused a condition as claimed by plaintiff.

Before we condemn the defendant in this case, we must have some evidence that the defendant, in installing lights for motorists' protection, could have reasonably foreseen that such lights would combine with fog and drivers' headlights so as to constitute an act of negligence. There is no evidence that any agent or employee of the defendant railroad ever knew or heard tell of the theory that lights installed for protection would become a hazard in the event of fog. It apparently was never even thought of by anyone until an expert promulgated the theory after the accident.

In Hetrick v. Marion-Reserve Power Co., 141 Ohio St. 347, 358, 48 N.E. 2d 103, 108, the court quoted appropriately from 1 Shearman and Redfield on Negligence (Rev. Ed.) 50, Section 24, as follows: "Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated. Reasonable anticipation is that expectation created in the mind of the ordinarily prudent and competent person as the consequence of his reaction to any given set of circumstances. If such expectation carries recognition that the given set of circumstances is suggestive of danger, then failure to take appropriate safe-

ty measures constitutes negligence. On the contrary, there is no duty to guard when there is no danger reasonably to be apprehended. Negligence is gauged by the ability to anticipate. Precaution is a duty only so far as there is reason for apprehension. Reasonable apprehension does not include anticipation of every conceivable injury. There is no duty to guard against remote and doubtful dangers." In Creasy v. Ohio Power Co., 6 Cir., 248 F.2d 745, 747, it was said: "It is not here contended that Ohio has abandoned the common law tests of actionable conduct that liability must be imposed only if danger should have been perceived by a reasonably prudent man, under all circumstances of a particular case." See also: Gedeon v. East Ohio Gas Co., 128 Ohio St. 335, 190 N.E. 924; Davis v. Cleveland Ry. Co., 135 Ohio St. 401, 21 N.E.2d 169; Smith v. Lampe, 6 Cir., 64 F.2d 201, certiorari denied 289 U.S. 751, 53 S.Ct. 695, 77 L.Ed. 1496; Erie R. Co. v. Lade, 6 Cir., 209 F.2d 948.

■ We find no evidence in the record from which a jury might have even inferred that a reasonable person should have anticipated that the vapor lights would combine with fog and headlights and cause an injury.

■ In Ohio, driving a motor vehicle into a train standing or moving over a grade crossing is a violation of the assured clear distance ahead statute and constitutes negligence as a matter of law. Skinner v. Pennsylvania Rd. Co., 127 Ohio St. 69, 186 N.E. 722; Capelle v. Baltimore & O. Rd. Co., 136 Ohio St. 203, 24 N.E.2d 822.

The plaintiff testified that when he reached the point where the three percent grade in the highway began, about four hundred feet from the intersection, he reduced his speed to twenty-seven or twenty-eight miles an hour and that at this speed he could stop within thirty-five feet. He also testified that at thirty-five feet he saw something white moving across the road, presumably the white lettering on the railroad cars. He moved on until he was within twenty or twenty-five feet of the crossing before he was

able to identify the train and before he attempted to avoid the impact.

■ We find nothing in the record which would excuse the plaintiff from compliance with the assured clear distance ahead statute of Ohio (Section 4511.21 Ohio Revised Code) because of fog. He was guilty of negligence as a matter of law. This statute constitutes a specific requirement of law, a violation of which is negligence per se. Gumley v. Cowman, 129 Ohio St. 36, 193 N.E. 627; Kormos v. Cleveland Retail Credit Men's Co., 131 Ohio St. 471, 3 N.E.2d 427. The Supreme Court of Ohio has construed this statute strictly. Smiley v. Arrow Spring Bed Co., 138 Ohio St. 81, 33 N.E. 2d 3, 133 A.L.R. 960.

In Toledo Terminal Rd. Co. v. Hughes, 115 Ohio St. 562, the driver of an automobile was held to be contributorily negligent as a matter of law, where an automatic signal was not working, and the driver drove his automobile into a train standing on the track over a crossing during a dense fog.

In Erdman v. Mestrovich, 155 Ohio St. 85, 91, 97 N.E.2d 674, 678, 31 A.L.R.2d 1417, 154 N.E. 916, the court said: "The 'assured clear distance ahead' constantly changes as the motorist proceeds and is measured at any moment by the distance between the motorist's car and the limit of his vision ahead, fixed by the skyline, darkness, rain or snow, fog or smoke, a hill ahead, a curve in the highway, or by the distance between the motorist's car and any intermediate discernible static or forward moving object in the street or highway ahead constituting an obstruction in the motorist's path or lane of travel."

In Smiley v. Arrow Spring Bed Co., 138 Ohio St. 81, 88, 33 N.E.2d 3, 7, the court said: "The statute is a safety regulation and imposes upon the operator of a motor vehicle at all times the unqualified obligation to be able to stop his car within the distance that discernible objects may be seen. By force of the statute the motorist may therefore assume nothing that is not assured to him by the range of his vision."

In McFadden v. Elmer C. Breuer Transportation Co., 156 Ohio St. 430, 435, 103 N.E.2d 385, 388, the court said: "In most instances the question whether the object with which the collision occurs is reasonably discernible gives little difficulty. A train on a highway crossing or a truck or an automobile on the highway in the driver's path can be considered reasonably discernible without more evidence than the fact of its presence."

For the reasons that we find no evidence of negligence against the defendant and no facts from which a reasonable inference of negligence could be drawn and that the plaintiff is guilty of negligence as a matter of law, the judgment of the District Court must be reversed.

It is therefore ordered that the case be remanded to the District Court with instructions to dismiss the complaint.