**GFB TRANSPORT COMPANY, Inc., an Alaskan corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. A–34–60.**

United States District Court
D. Alaska,
Anchorage.

Jan. 3, 1963.

Wayne D. Calderwood, Anchorage, Alaska, for plaintiff.

Warren C. Colver, U. S. Atty., and James R. Clouse, Jr., Asst. U. S. Atty., for defendant.

HODGE, District Judge.

Plaintiff brings this action under the provisions of the Federal Tort Claims Act (28 U.S.C.A. § 1346(b)) for damages to a Kenworth tractor and Aero-Liner semitrailer owned by it on account of negligence of the operators of two military vehicles operated by government employees, one of which was a gasoline tanker and the other a personnel carrier, which were parked on the highway, completely blocking both lanes of traffic. At the conclusion of the plaintiff's case upon trial to the Court defendant moved for judgment in its favor on account of alleged contributory negligence of plaintiff's driver, barring recovery, which issue was submitted to the Court. The negligence of the government agents is not denied.

There is no dispute as to the facts, which may be summarized as follows: The accident causing the damage occurred on January 11, 1960, at a point on the Glenn Highway approximately 148 miles from Anchorage, near the crest of a hill. Plaintiff's driver was engaged in hauling merchandise with the tractor and semitrailer weekly between Anchorage and Fairbanks. This was his 100th trip and the only accident in which he had ever been involved. The highway was covered with hard-packed snow and ice. The time was about 8:00 p. m. It was a bright night and his visibility was very good. With his headlights he could see easily 300 yards ahead. Upon reaching the crest of the hill he was traveling, according to a "speedograph" carried on the truck which accurately records speed and time, at 42 miles per hour. The speed limit in force at such time and place was 50 miles per hour. He had, on the combined rig, 16 braking wheels and could normally stop at 45 miles per hour in about 140 feet, but on icy roads this would take approximately three times as long, or 420 feet, plus additional space up to 560 feet on down grade. The grade of the hill was estimated at 5%. The road was straight, with no crossroads, and the traffic was not heavy. The width of the highway was 25 feet, and of the traveled portion approximately 20 feet.

Upon breasting the crest of the hill he first saw the government vehicles when about 300 feet distant. The personnel carrier was parked on the right-hand side of the highway, facing toward him. The tanker was parked alongside this vehicle, also facing toward him. One of the vehicles had bright headlights burning; the other had none. The highway was completely blocked by these vehicles. There were no flares or other warning devices. The driver was unable

to stop, but, finding that he could not pass on either side of the road, he took the last clear chance and attempted to go outside of the vehicles on the right. The front wheel of the tractor struck the end of the tanker as he went by and he ended up in the snow berm with the front end of his rig some 65 feet from the highway and the rear end about 5 feet from the highway, damaging plaintiff's vehicles. He further testified that he could not stop within 300 feet unless his speed was not in excess of 25 miles per hour, and a State Highway officer, called to the scene, testified that his speed was not excessive under normal circumstances, and that to avoid the accident he would need to be going "awfully slow," or almost stop at the crest of the hill.

■ Defendant relies entirely upon the "assured clear distance ahead" rule, enacted in many states by statute. There was no such statute in force in Alaska but the pertinent portions of the Traffic Regulations promulgated by the Territorial Department of Highways and Public Works, still in effect under Statehood, provided as follows:

"Article VIII—SPEED RESTRICTIONS

"Sec. 2–801—Basic Rule and Maximum Limits.

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

"(d) The driver of every vehicle shall, consistent with the requirements of paragraph (a) drive at an appropriate reduced speed when approaching and crossing an intersection or railway grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."

Defendant argues that in the absence of such specific statute and at common law and under the regulation requiring the driver of a motor vehicle to use reasonable and ordinary care, the rule accepted by the weight of authority in the United States is that a driver is not exercising ordinary care and is negligent if he proceeds at a speed in the darkness such that he cannot bring his vehicle to a standstill within the distance that he can plainly see objects or obstructions ahead of him by the light of his own headlamps or within the range of his vision.

■ The rule is well established that ordinarily it is negligence as a matter of law to drive a motor vehicle at such a rate of speed that it cannot be stopped in time to avoid an obstruction discernible within the driver's length of vision. There are, however, exceptions to this rule, from which it appears that the proper application of the rule must depend upon the facts and circumstances of each particular case. For a general discussion of this subject see Annos. 44 A.L.R. 1403; 58 A.L.R. 1493; 87 A.L.R. 900; 97 A.L.R. 546, and (especially as the principle applies to approaching a hill or curve) 133 A.L.R. 967.

. Notable among such exceptions, as clearly applicable to the circumstances of the instant case, is the principle announced in the leading case of Hangen v. Hadfield, 1939, 135 Ohio St. 281, 20 N.E.2d 715, holding that the statutory provision that a person must keep his automobile under such control as would enable him to stop within the assured clear distance ahead did not require the

driver of a motor vehicle approaching the crest of a hill on a public highway to anticipate that his proper path would be obstructed by another automobile (in this case driven in the opposite direction) in a manner contrary to law. To quote from the opinion:

"As contended by the defendant, it is of course true that as the plaintiff approached the brow of the hill he knew that his view was obstructed thereby. However, it is likewise true that the plaintiff was not required to anticipate that the driver of an approaching motor vehicle would violate the law by obstructing the plaintiff's proper path."

In another Ohio case, Sidle v. Baker, 1936, 52 Ohio App. 89, 3 N.E.2d 537, the principle is further announced that the user of a highway is entitled to assume that the road is free from obstructions unlawfully created by another user and that a question of fact of proximate cause and negligence of the driver is presented regardless of whether or not the provisions of the "clear distance ahead" statute were complied with. The court, after discussing the situation, states:

"He [plaintiff] was traveling at a rate of speed which cannot be said to have been clearly unreasonable unless plaintiff was required to assume that the defendant would be unlawfully obstructing the road on the other side of the hill. But he was no more required to assume that than he was required to assume that every car approaching on the right side of the road would get over onto the wrong side, or that around every bend in the road and over the crest of every hill he approached someone would be unlawfully obstructing his path, passing other cars on the bend or hill, or parked in the middle of the highway."

Similarly, in Gelfand v. Strohecker, Inc., 150 F.Supp. 655 (aff'd 6 Cir., 243 F.2d 797) the District Court for the District of Ohio rejected the contention of negligence on behalf of the driver of a truck failing to stop within the "clear distance ahead" rule, stating that the driver was not required to be on the lookout for persons who might violate the law and that he had a right to assume that the drivers of other vehicles would obey the law.

A further recognized exception or "legal excuse" for failure to observe the requirements of the statute occurs where the driver of a motor vehicle is confronted by a sudden and unexpected emergency not of his own making which he had no reason or ground to anticipate. Brown v. Wackman, Ct.App.Ohio, 1949, 86 N.E.2d 27; Marron v. Elmquist, 1938, 132 Pa.Super. 12, 200 A. 207. In Brown v. Wackman the court refers to a previous decision of the Supreme Court of Iowa in Kadlec v. Al. Johnson Construction Company, 217 Iowa 299, 252 N.W. 103, commenting upon the "peculiar circumstances" which may make the issue of contributory negligence a question of fact, stating that this decision:

"abounds with common sense and appreciation of the practical operation of automobiles on highways."

In the instant case plaintiff's driver was not required to assume that his path would be blocked by so extraordinary and grossly negligent conduct of the drivers of the government vehicles leaving the two vehicles parked on the highway so as to completely block his path, and had no reason or ground to anticipate any such sudden and unexpected danger.

Defendant cites as a leading case under this fact situation a decision of the Supreme Court of Ohio in Smiley v. Arrow Spring Bed Co., 138 Ohio St. 81, 33 N.E. 2d 3, 133 A.L.R. 960, in which the court held that the "assured clear distance ahead" rule applied to a plaintiff who ran into the back of an unlighted truck just over the crest of a hill, although recognizing that under certain circumstances a driver would be legally excused from the application of such rule. This case represents a rigid and narrow application of the rule and is not in accord with other decisions recognizing realistic con-

ditions existing on our highways. In fact, two of the judges dissented from the majority opinion and pointed out the holding in Hangen v. Hadfield to the effect that the provisions of the statute do not require the driver approaching the crest of a hill to anticipate that his proper path will be obstructed by another automobile parked contrary to law.

Other cases cited by defendant in which the rule was applied involved circumstances distinguishable from the instant case: Eldredge v. Garrison, 1935, 184 Wash. 687, 52 P.2d 1240 (in which the plaintiff, approaching a truck moving in the same direction, attempted to pass the truck on the right shoulder of the road during a heavy fog, described as "one of the most dangerous conditions which can beset the driver of a motor vehicle," holding that the driver "exercised less than the degree of care required of a reasonably prudent driver, under the circumstances"); Goodman v. Wisby, 1940, 152 Kan. 341, 103 P.2d 804 (in which plaintiff knowingly drove blindly over the crest of a hill in a cloud of dust completely obscuring his vision, which the court held was no exception to the general rule, which exceptions are grounded on the exercise of ordinary care); Kelly v. Knabb, D.C.Fla., 1924, 300 F. 256 (where plaintiff's car ran into a standing truck and the court found that the driver was not using any ordinary care whatever in looking ahead); Bielecki v. United Trucking Service, 1929, 247 Mich. 661, 226 N.W. 675 (where a party was driving 15 miles per hour at night in a storm with lights on his truck in poor condition, disclosing a view of not more than 10 feet); Eldredge v. Sargent, 1939, 150 Kan. 824, 96 P.2d 870 (where a motorist ran into the rear of an unlighted truck being pushed down a slope at night and he could have seen the truck to avoid running into it had he been exercising ordinary care); Serfas v. Lehigh & N. E. R. Co., 1921, 270 Pa. 306, 113 A. 370, 14 A.L.R. 791 (failure to "stop, look and listen" before entering upon a railroad track); Maddox v. Wendler, D.C.Alaska, 1954, 125 F.

Supp. 543, 15 Alaska 269 (plaintiff held contributorily negligent in attempting to pass parked truck when his view was obstructed because of a curve; issue here not involved).

In another case cited by defendant, Nielsen v. Watanabe, 1936, 90 Utah 401, 62 P.2d 117, the court reversed the trial court's ruling sustaining a demurrer to the complaint by reason of contributory negligence under the "assured clear distance ahead" rule, where plaintiff's husband ran into a parked truck at night, but was blinded by brilliant lights of a car approaching from the other direction, was driving at a lawful rate of speed and had no reason to believe that he would be so blinded, holding that in such case the rule relied upon would not apply, and that "Under such circumstances it may not be said that plaintiff's husband was, as a matter of law, guilty of contributory negligence."

In view of these authorities, applying the rule relied upon by defendant to the universal standard of the "reasonable and prudent" person, and "having regard to the actual and potential hazards then existing," as provided by Section 2–801 above, I am unable to find the plaintiff's driver guilty of contributory negligence such as to bar the recovery of plaintiff for the damages suffered.

There was no dispute as to the amount of the damages claimed and proven, consisting of repairs to the tractor and trailer, the cost of transporting the equipment to Anchorage for repair and the cost of renting equipment to carry on the work for which the tractor and trailer were used pending repair, in the total amount of $4,112.90. Plaintiff may have judgment against defendant for such amount. Plaintiff may also recover its costs. An attorney's fee equal to 20% of the amount recovered, exclusive of costs, may be allowed to plaintiff's counsel, to be paid out of but not in addition to the amount of the judgment, pursuant to Sec. 2678, Title 28 U.S.C.A. Judgment may be presented accordingly. No further Findings of Fact or Conclusions of Law will be necessary.