MOTORISTS MUTUAL INS. CO. ET AL., APPELLEES, *v.* PECK, APPELLANT.

(No. 2799—Decided March 19, 1964.)

*Mr. Walter L. Dodsworth,* for appellees.
*Mr. Mason Douglass,* for appellant.

CRAWFORD, J. This case arises out of a collision between plaintiff Bruce Weinland's 1955 Ford Thunderbird automobile

and defendant's International Harvester Farmall tractor, which occurred about twelve o'clock noon in bright sunlight June 6, 1956, on State Route 202 which runs north and south, at a point a short distance north of new U. S. Route 40. Defendant appeals from a judgment for plaintiff in the sum of $1,374.23 for property damage, entered upon the verdict of the jury.

The first assignment of error is that the verdict is contrary to the manifest weight of the evidence.

The evidence indicates these facts: Plaintiff's automobile was proceeding south, while defendant's tractor was crossing the highway from east to west. The paved portion of the highway was approximately twenty feet wide, divided by a white center line, and bordered on each side by a gravel berm several feet wide. Defendant lives along a lane or drive running to the west, known as Peck's Lane. On the east side of the highway and opposite to the north line of Peck's Lane is his mailbox, along with two others. Approximately eighty feet south of Peck's Lane and the mailboxes, Black's Lane runs east from the highway.

Shortly before the collision, defendant had driven his tractor south and stopped on the east berm alongside his mailbox and looked into it for mail. The berm at that point is some eight feet wide. Plaintiff approached from the north, traveling south in the west, or southbound, lane of the highway.

Defendant started to drive his tractor across the highway toward the west in order to enter his lane. The evidence is in conflict as to whether any part of the tractor had crossed the center line. The rear of the tractor was approximately at the east edge of the pavement. Plaintiff claims that at this point defendant stopped and then started up again. Defendant's testimony indicates that his westward movement was continuous.

Plaintiff testified that: He first noticed the tractor while it was parked on the berm east of the highway when plaintiff was nearly nine hundred feet to the north, having just emerged from a dip in the highway, which had prevented him from seeing the tractor earlier; he, the plaintiff, was traveling south in the west, or southbound, lane at a speed of approximately 45 miles an hour: when he was 300 feet distant he saw

that the tractor was crossing the highway from east to west and that there was no traffic approaching from the south; at that point plaintiff took his foot off the accelerator and turned into the east, or northbound, lane of the highway, expecting the tractor to continue across the highway out of his path, and intending to pass behind it; he continued in that lane for approximately 200 feet; when he was within about 100 feet, at which time he says the tractor stopped, he realized that he could not continue in the east, or northbound, lane without hitting the tractor; he then attempted to return to the west, or southbound, lane, applied his brakes, and slid, partly sidewise, into the front part of the tractor.

Defendant testified that later, while in the hospital, plaintiff admitted a speed of 65 miles an hour. According to defendant's wife, plaintiff at that time estimated his speed at between 50 and 65 miles an hour.

Defendant's brief accurately quotes this testimony of the plaintiff:

"I was going south into Dayton, which is the west lane. I was in no particular hurry so I was driving along leisurely and I noticed up ahead, quite a way ahead, there was this tractor that was off to the left hand side of the road, setting at a mail box, which didn't particularly alarm me any and when I got a little bit closer, it started—it was setting on the left hand side of the road facing the same direction I was going but it was off in his lane, away over and wasn't bothering me any at the time so I didn't pay any attention to it. As I got a little closer, he turned to his right and started to cross the road and down his lane. Apparently he was going to go down his lane. He hadn't got that far. It still didn't alarm me too much because if he continued, it would be no problem because I could see beyond him and there wasn't anyone coming toward me. As I got closer yet, he stopped and I could see he was trying to change gears or put it in reverse or something to get back off of the highway so then I tried to get back in the right hand lane, applied my brakes again and I slid into the side of the tractor."

There is evidence that prior to the collision the automobile skidded somewhere between 175 and 200 feet, mostly in the east lane of the highway.

Heavy damage was done to the front of the tractor, and

it was thrown three or four feet off its course. The channel irons were bent, the bolster stripped off, the spindle broken, etc., and the wheels and spindle came to rest in the side ditch 20 or 30 feet south of Black's Lane. Plaintiff's automobile came to rest somewhere south of Peck's Lane, approximately opposite Black's Lane, apparently on the east side of the highway. One witness testified there were skid marks south of the point of collision.

This first assignment of error, that the verdict was contrary to the manifest weight of the evidence, is directed primarily to the evidence on the issue of contributory negligence.

The evidence strongly indicates that plaintiff was in violation of the assured-clear-distance rule. Section 4511.21, Revised Code, which states the rule, has been uniformly and consistently interpreted to mean that the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop within the assured clear distance between his vehicle and a discernible object obstructing his path or line of travel, unless such assured clear distance ahead is, without his fault, suddenly cut down or lessened by the entrance, within such clear distance ahead and in his path or line of travel, of some obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith. This exception is the only defense. *Smiley* v. *Arrow Spring Bed Co.* (1941), 138 Ohio St. 81, 133 A. L. R., 960; *Erdman* v. *Mestrovich* (1951), 155 Ohio St. 85.

In this case the distance was not suddenly cut down. It remained practically the same. Plaintiff expected the distance to be increased, and that the visible object ahead would leave his path, but it did not. The object did not suddenly appear, it was already there, and remained there.

If plaintiff had remained in the west lane and if the defendant's tractor had suddenly entered that lane, thus cutting down the assured clear distance ahead, it would still have been plaintiff's duty to avoid the collision by stopping if he could have done so in the exercise of ordinary care. But there is no evidence that he attempted to stop while in the west lane.

Neither is there any evidence that he was required to change to the east lane in order to avoid a collision. His purpose in turning into the east lane was to pass the tractor.

He says he turned into the east lane when he was 300 feet

away from the tractor and saw it crossing the road. At that point he says he removed his foot from the accelerator but did not apply his brakes for another 200 feet.

We can only conclude that he entered the east lane by choice and not from necessity. He chose that as his lane of travel, with a discernible object 300 feet ahead. He assumed the responsibility of observing the assured-clear-distance rule in the east lane which he chose to travel. There is nothing to indicate that he violated the rule when he first entered the east lane. But by traveling in it for another 200 feet before applying his brakes he placed himself in a position where he could not stop within the assured clear distance ahead. The evidence clearly indicates, therefore, that he drove in violation of that rule.

"* * * there is no distinction to be made with reference to a discernible object within the assured clear distance, based upone whether that object is moving at a normal speed, a slow speed, or is static." *Bickel* v. *American Can Co.* (1950), 154 Ohio St. 380.

Violation of this statutory provision is negligence per se. *Skinner* v. *Pennsylvania Rd. Co.* (1933), 127 Ohio St. 69; *Gumley* v. *Cowman* (1934), 129 Ohio St. 36; *Kormos* v. *Cleveland Retail Credit Men's Co.* (1936), 131 Ohio St. 471.

In the case of *Higbee Co.* v. *Lindemann* (1936), 131 Ohio St. 479, at 480, the court made this interesting comment:

"This statement discloses either a manifest violation of Section 12603, General Code [Section 4511.21, Revised Code], by the plaintiff in the operation of her automobile, or that the plaintiff was driving at such speed that she could have stopped within the assured clear distance ahead and, for some unexplained reason, failed to do so. * * *"

The assured-clear-distance rule is no less applicable because plaintiff was traveling south on the east side of the highway. Whether he had a lawful right to be there at the time or not, that was his "path or line of travel" and defendant's tractor was a discernible object obstructing it. There may be a slight similarity to the facts in *Bredenbeck* v. *Hollywood Cartage Co.*, 92 Ohio App. 265, where plaintiff collided on a foggy night with an unguarded truck parked at the *side* of the road.

It is our opinion that a finding that the plaintiff in this case was free from contributory negligence is contrary to the weight of the evidence.

The second assignment of error is that the verdict was induced by prejudice and passion and contrary to the charge of the court. We find no substance in this assignment.

The third assignment is that the court erred in giving special instructions requested by the plaintiff. Only one of these was given. It correctly charged on the subject of sudden emergency. Plaintiff claims and endeavored to prove by the evidence that he was confronted with such emergency by reason of defendant's negligence. If the case was to be submitted to the jury, we find no error in this special instruction.

The fourth assignment is that the court erred in refusing to give two special instructions requested by the defendant. The first of these combined a fragmentary statement as to the law of speed and a brief general reference to ordinary care. The second combined an incomplete reference to the duty of the plaintiff to maintain a lookout and his duty to observe the rule as to assured clear distance. We perceive no error in refusing these requested charges.

The fifth assignment is that the court erred in instructing the jury as to the application of the assured-clear-distance rule. The instruction on this subject was couched in the language customarily used and generally approved. It was declared applicable to a "visible object in his path of travel" and within the "limit of his vision ahead in the same line in which the motorist is proceeding." This should have left no doubt in the minds of the jury that the court was talking about the path or line of travel actually being followed by the plaintiff.

We see no error and no prejudice to the defendant in this charge.

The sixth assignment pertains to the ruling of the court relative to admission of evidence. The argument is general. Defendant concedes that there are no errors in this area justifying reversal.

Assignments 7, 8 and 9 relate to the overruling of defendant's motions for a directed verdict at the conclusion of all the evidence, later for judgment non obstante veredicto, and for a new trial.

In accordance with our analysis of the evidence under the first assignment, we believe the judgment is contrary to the weight of the evidence and that the court should have so ruled as to relieve the defendant of the judgment.

The judgment will be, and hereby is, reversed, and the cause remanded to the Court of Common Pleas for further proceedings according to law.

*Judgment reversed.*

KERNS, P. J., and SHERER, J., concur.