ROSZMAN, ADMX., APPELLANT, *v.* SAMMET, D. B. A. HOMER F. SAMMET TRUCKING CO., APPELLEE.

[Cite as Roszman v. Sammett, 20 Ohio App. 2d 255.]

256

[black redaction bar]

[black redaction block]

[black redaction bar]

(No. 210—Decided November 26, 1969.)

[black redaction bar]

*Messrs. Stansbery & Schoenberger,* for appellant.
*Messrs. Roth & Bacon* and *Mr. Robert B. Spurlock,* for appellee.

Cole, P. J. This case is before this court on appeal from a judgment for the defendant in the trial court predicated upon the granting of a motion for a directed verdict at the close of plaintiff's evidence. Essentially, the case involves the possible exceptions to a violation of the "assured clear distance statute," constituting contributory negligence.

On January 19, 1967, the plaintiff's decedent was driving to work about 7:10 a. m. in a southerly direction along State Highway No. 67 slightly south of Upper Sandusky. The light was essentially a morning twilight "leaning more toward darkness." He drove directly into a tractor trailer, which was stopped in the southbound lane, and was killed instantly. The evidence as to the state of darkness and as to the lights on the tractor trailer is conflicting. Interpreting the evidence most favorably to plaintiff, a state of near darkness existed and there were no lights on the tractor trailer. The evidence indicated that the decedent had made no attempt to stop his car; there were no skid marks.

In *Smiley* v. *Arrow Spring Bed Co.,* 138 Ohio St. 81, it was held, in the second paragraph of the syllabus:

"To comply with the assured-clear-distance-ahead provision of Section 12603, General Code, the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop within the distance between his motor vehicle and a discernible object obstructing his path or line of travel, unless such assured clear distance ahead is, without his fault, suddenly cut down or lessened by the entrance within such assured clear distance ahead and into his path or line of travel, of some obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith."

See, also, *Pallini* v. *Dankowski,* 17 Ohio St. 2d 51.

Since the defendant's truck was directly in the line of travel, and since it was of such size as to be normally considered a discernible object irrespective of whether it had lights on the rear (See *Kormos* v. *Cleveland Retail Credit Men's Co.,* 131 Ohio St. 471), the plaintiff's decedent was, unless he came within some exception, guilty of violating the assured-clear-distance provision (Section 4511.21, Revised Code) and was guilty of contributory negligence prohibiting recovery irrespective of negligence of the defendant.

The case then turns on the possible exceptions which might nullify this line of reasoning:

1. Some argument was made that there was in fact no discernible object in that the evidence might indicate a cloud of vapor surrounded the truck trailer concealing it from view. We do not believe this evidence would be of assistance to the plaintiff. If a patch of vapor existed impairing the view, then it only served to cut down the distance that was assured to be clear and would not change the duty upon the plaintiff's decedent or the clear conclusion from the fact of the collision that he violated that duty. There is also some argument that a yard light created shadows obscuring the truck by virtue of the intensified shadow area or the dazzling character of the light. Again, however, such a condition would not change the applica-

tion of the statute, as the variation of illumination would directly affect the variable permissible speed.

"Neither bends nor twists in the highway, crests in the road, dim lights, fog, sleet, rain, or blinding lights of approaching motor vehicles will excuse him from the duty to drive so that he can stop his vehicle within that assured clear distance ahead." 6A Ohio Jurisprudence 2d 377, Section 355; *Gordon* v. *Columbus & Southern Ohio Electric Co.*, 112 Ohio App. 218; *Snouffer* v. *Potter Lumber & Supply Co.*, 77 Ohio App. 546; *Schroff* v. *Foley Construction Co.*, 87 Ohio App. 277.

2. It is further argued that the "sudden emergency" exception which is mentioned in the *Smiley case* (138 Ohio St. 81) applies. However, interpreting the evidence in its most favorable light for the plaintiff, we still find the factual situation could not justify such a conclusion.

The evidence indicates that defendant operated a road contracting business on premises adjacent to the highway at about the place the accident occurred. On the morning involved, shortly prior to the moment of collision, it had been discovered that one of his trucks would not start. At that time it was in his driveway off the highway. To start it, a second truck was hitched to it, pulled it into the highway and traveled about 200 feet; the engine started, and the driver of the first truck got out to unhitch the vehicles. At this approximate moment the collision occurred.

The uncontradicted testimony is that the maximum speed of the tandem operation was 2 miles per hour. At this rate the trucks would have been on the road at least a minute and a half to two minutes, allowing time for the turning operation. Even assuming that the decedent's car was traveling at twenty miles per hour (far less than the obvious speed required to produce the damages), the decedent would have traveled between 1,700 and 2,500 feet. A sudden emergency cannot be predicated upon such figures. The trucks were on the highway a sufficiently long time to give the decedent ample warning of their presence.

3. These two exceptions not being applicable, we come to plaintiff's major contention. Contributory negligence of

a plaintiff is a defense to negligence of a defendant; it is not a defense to wanton misconduct.

"A party charged with wanton misconduct is deprived of his plea of contributory negligence." *Universal Concrete Pipe Co.* v. *Bassett,* 130 Ohio St. 567, 119 A. L. R. 646, the fourth paragraph of the syllabus.

"Where wanton misconduct on the part of a defendant existed, negligence on the part of the plaintiff is not available as a defense." *Kellerman, Admx.,* v. *J. S. Durig Co.,* 176 Ohio St. 320, paragraph three of the syllabus.

Predicated upon this concept, it is plaintiff's contention that the defendant was guilty not of simple negligence but of wanton misconduct and the violation by her decedent of the assured-clear-distance statute is unavailable as a defense.

Wanton misconduct was last defined by the Supreme Court in the *Kellerman case* (176 Ohio St. 320), in the second paragraph of the syllabus:

"Wanton misconduct charged against a defendant implies a disposition to perversity and a failure to exercise any care toward those to whom a duty of care was owing when the probability that harm would result from such failure was great and such probability was actually known, or in the circumstances ought to have been known, to the defendant."

This definition is substantially a summary of the definition previously developed in the *Bassett case* (130 Ohio St. 567). In that case, it was said, in the syllabus:

"Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury. * * *"

See, also, *Bush* v. *Kelley's Inc.,* 18 Ohio St. 2d 89.

In the *Bassett case* the court determined that there was no evidence of wanton misconduct and hence there was no evidence to warrant a charge to the jury on it. There,

260

260

however, the driver of a truck lost his way and stopped his truck on the proper side of a city street long enough to cross the street to make inquiry. He had a few minutes before he examined his rear lights and found them to be then lighted. Thus, the fact situation is distinguished both from the present case and the *Kellerman case* on the element of knowledge. The driver believed he was stopping and temporily parking a car with rear lights. He did not knowingly place or leave an unlighted vehicle in the lane of travel.

In the *Kellerman case* a truck with motor trouble stopped with the left rear portion of the truck protruding five feet or more into the traveled portion of the highway at about 4:30 to 4:45 p. m. on a day in early January. There were no lights on the tractor and none on the trailer, apparently due to wiring difficulties. There were flares in the truck. The driver wandered about, did not light the flares, made no effort to get help and obviously knew of the lack of lights on his vehicle. The sun set at 5:08, and it grew darker, but still he did nothing. At 5:55 p. m. the collision occurred. Here, knowledge of the unlighted vehicle was implicit in the situation. In the initial situation, before darkness, the absence of lights of any kind might not have been wanton misconduct, since daylight could have revealed the tractor-trailer. However as the driver waited, doing nothing, the light failed and darkness came. Thus he suffered or tolerated a highly dangerous situation to develop. The court explicity states that passively allowing the truck to remain unlighted for an hour or more after darkness had set in and with no warning signals created a situation of "extreme danger and hazard for the drivers of motor vehicles using the road."

In the present case, assuming the facts most favorable to plaintiff's case, the defendant's employees drove a tandem of trucks on the highway, the towed vehicle having no lights, but it was on the road only a short period of time prior to the collision. Does the length of time distinguish the cases?

We think not. In the *Kellerman case* (176 Ohio St.

320) the passage of time was necessary for darkness to fall and the hazardous situation to come to full flower. Here, assuming near darkness (as plaintiff's most favorable evidence would tend to establish), the passage of time to create the hazardous situation was unnecessary. It existed in full bloom the moment the unlighted truck was pulled into the traffic lane. That this was an extremely hazardous situation is established by the court's determination in the *Kellerman case*, for the end result in that and in the instant case was the same: an unlighted truck wholly or partially in a traffic lane on a public highway in darkness.

In that case (*Kellerman*) the situation was passively suffered to come into existence by the driver's inactivity. In the instant case there was a deliberate creation of the situation by defendant's employees. In the one case there was a failure to act, in the other an intentional act. Looking to the definition used by the Supreme Court in both the *Bassett* and the *Kellerman cases*, we believe this intentional act constituted wanton misconduct.

A. The disposition to perversity is a mental state which can only be established indirectly by reference to the overt conduct from which its existence is inferred. We look then to the overt conduct.

B. The intentional act of the defendant's employees displayed a total failure of care toward those using the same lane of the highway, since they deliberately towed an unlighted vehicle (and in particular one with no rear lights) on to that lane of the highway.

C. A duty of care toward other users of the highway and in particular to users of the southbound lane of that highway existed.

D. The failure to have lights on the towed truck created a situation in essence identical with the final situation in the *Kellerman case* (176 Ohio St. 320); an unlighted truck partially (or, as here, wholly) in the traveled portion of a public highway in darkness. And this the court determined to have "created an extreme danger and hazard for the drivers of motor vehicles using the road."

E. The probability of harm must be assumed to be

great when the situation was one of extreme danger and hazard.

F. The defendant's employees knew of the situation they were creating and ought to have known the hazard to others resulting therefrom.

Therefore, the evidence construed most favorably to plaintiff required submission of the issue of wanton misconduct to the jury.

It might be argued, as the court did in *Close* v. *Wagner*, 61 Ohio App. 244, that defendant's employees could rely upon others obeying the law; that, if the assured-clear-distance statute and the requirement as to headlights in conditions of darkness, had been observed, there never would be any accidents and, hence, there was no danger of one. However, when the Supreme Court in the *Kellerman case* determined the condition there to be of extreme danger and hazard, it in effect eliminated this consideration. If we assume full compliance with the statutes by other drivers, we may have a hypothetical situation of no danger. As a real situation, however, it is fraught with danger, as the Legislature has most recently recognized in requiring warning signs on even slow moving vehicles.

We would conclude that the evidence presented by the plaintiff created a question for the jury on the issue of wanton misconduct.

*Judgment reversed and cause remanded for new trial.*

GUERNSEY, J., concurs.

YOUNGER, J., dissenting. Giving the plaintiff's evidence its most favorable interpretation, we still have, in my opinion, only negligence upon the part of the defendant's employees. I can find no evidence in this record of "a disposition to perversity" or of "a complete lack of care toward those to whom a duty of care existed." (*Kellerman, Admx.,* v. *J. S. Durig Co.,* 176 Ohio St. 320.)

I would affirm the action of the trial court in directing a verdict for the defendant at the close of the plaintiff's evidence.