MURRAY, APPELLANT, *v.* CAMERON, A MINOR, APPELLEE, ET AL.,
APPELLANT. (Two cases.)

(Nos. 7153 and 7154—Decided July 16, 1963.)

*Mr. Leo A. Roberts*, for appellants.
*Messrs. Power, Griffith, Jones & Bell, Mr. S. Noel Melvin*
and *Mr. William H. Schneider*, for appellee.

BRYANT, J.   As indicated in the style, there are pending
before this court appeals on questions of law in two cases tried
in the Columbus Municipal Court, each of which was founded
upon facts in a single motor vehicle accident.

In case No. 7154, Mrs. Ruth L. Murray was plaintiff in the
court below and is appellant here.   Bruce Lee Cameron, a minor,
seventeen years of age, by his father, Don S. Cameron, as next
friend, and Jane R. Cameron, his mother, as the person "who
signed the application for said minor's operator's license,"
were defendants in the court below and are appellees here.

In the above-described action, Mrs. Murray sued for dam-
ages to a 1952 Chevrolet automobile owned by her, claimed to
amount to $300, and for personal injuries sustained by her in-
cluding a fractured nose and bruises, asking in the aggregate
damages in the amount of $2,867.

In case No. 7153, Bernard N. Murray, husband of Mrs. Ruth

L. Murray, was plaintiff in the court below and is appellant in this court. The same three members of the Cameron family, as were defendants in case No. 7154, were defendants in this action in the court below and are appellees herein.

Bernard N. Murray, in case No. 7153, just above referred to, brought suit for damages in the amount of $284.97 to his 1959 Pontiac sedan and also an additional $44 for hiring other transportation and taxicab service, or a total of $328.97.

Both actions were based upon a motor vehicle accident taking place at 2 a. m. on December 13, 1959, on Beecham Road in Franklin County, Ohio. Two of the three motor vehicles involved in the collision were 1959 Pontiac automobiles and two of the witnesses were named Bernard Murray. The other automobile involved was a 1952 Chevrolet sports coupe owned by Mrs. Ruth L. Murray.

Bernard N. Murray, plaintiff in case No. 7153, of Gahanna, Ohio, is an attorney at law, and Bernard Michael Murray is his son and also the son of Mrs. Ruth L. Murray.

The two cases came on for trial before a Judge of the Columbus Municipal Court sitting as judge and jury. After the presentation of all the evidence in each of the cases and the submission of the matter to the court as jury, the court held in each case that the evidence offered by the plaintiffs had failed to establish negligence on the part of Bruce Lee Cameron, defendant in each of the cases and driver of the vehicle claimed to have caused the collision. As a result, the court below entered judgment in each case in favor of the defendants, after which the Murrays gave notice of appeal to this court on questions of law.

In the court below the two suits were treated as companion cases and the bill of exceptions in case No. 7154 by Mrs. Murray was adopted and, with some additional evidence, became the bill of exceptions in case No. 7153 brought by Bernard N. Murray. For these reasons, and for the reason that defendants are identical in both cases, as are many of the operative facts, we shall consider both cases in this opinion.

As previously noted, both suits were filed following a motor vehicle accident which took place at 2 a. m., December 13, 1959, in front of the home of William Flowers, 4290 Beecham Road (now North Hamilton Road), Franklin County, Ohio. Beecham Road runs north and south, is divided by a center line with one

lane for moving traffic on each side thereof, the accident in question taking place at a point two-fifths of a mile north of U. S. Rt. 62.

It appears that the younger Murray (Bernard Michael) and a friend, Ronald Edgerly, were traveling in the 1952 Chevrolet sports coupe, owned by Mrs. Ruth L. Murray, with the younger Murray at the wheel. At 12:45 a. m. on the date of the accident, the two just named were driving in a northerly direction on Beecham Road and, as they neared the Flowers residence, the battery in the Chevrolet automobile played out, leaving the car without lights and causing the engine to die. Young Murray and Edgerly pushed the Chevrolet automobile off the paved or traveled part of the road parking it in the front yard of the Flowers residence. It was headed in a northerly direction, was parallel to and either one foot or four feet east of the traveled portion of Beecham Road.

The two boys set out on foot to locate a telephone and call for help. Sometime later they located a phone and placed a call to the Murray residence, in response to which Mrs. Ruth L. Murray drove to the Flowers residence. She made the trip in a 1959 2-door Pontiac automobile owned by her husband.

When she arrived at the scene, the younger Murray directed her to park the Murray Pontiac directly in front of the Murray Chevrolet with the front of the Pontiac facing the front of the Chevrolet, and with both cars parallel to and approximately the same distance east of the traveled portion of Beecham Road. The testimony showed that the purpose of parking the two cars in this manner was to permit the attachment of a cable connecting the live battery in the Murray Pontiac to the electrical system in the Chevrolet and thus permit the starting of the Chevrolet, both carrying storage batteries near the front. There was testimony, and the trial court found, that the Murray Pontiac was equipped with four headlights, two on each side of the front thereof, and that they were turned on bright. It also appears that the two parked cars were about one foot apart, that young Murray and Edgerly were engaged in attaching the jumper cable and were moving about, and that the hoods were up on both automobiles.

Sometime after the arrival of the Murray Pontiac, and its being headed in a southerly direction, another 1959 Pontiac au-

tomobile came along Beecham Road traveling in a northerly direction. This car was owned by Don S. Cameron of Columbus, Ohio, and was being driven by his son, Bruce Lee Cameron. In the back seat of the Cameron Pontiac were Andy Seiller and Gaye Maples. It was the claim of young Cameron that he suddenly came onto two blinding bright lights, and that he instantly attempted to apply his brakes and to hold the car in the same direction it had been traveling. He testified that the light was not visible to him until he was approximately one hundred to one hundred fifty feet away. It appears that the Cameron Pontiac veered gradually in the direction of the parked cars and collided with the Chevrolet, the right front corner of the Cameron Pontiac striking the left rear corner of the Chevrolet causing it to strike the Murray Pontiac which was shoved across Beecham Road. The finding of facts by the trial court follows:

"1. The plaintiff, Ruth L. Murray, was on December 13, 1959 the owner of a 1952 Chevrolet sports coupe.

"2. That on said date at approximately 1:30 a. m., the Chevrolet was parked by the plaintiff's son approximately three and one-half feet off the traveled portion on the east side of Beecham Road in front of the residence of Mr. and Mrs. William Flowers, located at 4290 Beecham Road, and was headed approximately north parallel to the traveled portion of Beecham Road.

"3. That the plaintiff parked a 1959 Pontiac 2 door automobile, owned by her husband, facing south on the east side of Beecham Road.

"4. That said Pontiac's front bumper was approximately one and one-half feet from the front bumper of the Chevrolet referred to above.

"5. That the 'bright' headlights on the 2 door Pontiac were lighted.

"6. That the bright headlights of the 2 door Pontiac consist of four separate globes.

"7. That the hoods of both the Pontiac and the Chevrolet were raised.

"8. That there were no lights of any kind lighted on the Chevrolet.

"9. That Beecham Road at the place in question and for a distance south to Route 62 runs in a straight north-south direction.

"10. That there are a few *minor* 'dips' in Beecham Road in the area south of the location of the parked Chevrolet and Pontiac.

"11. That the 1959 Pontiac 2 door was parked approximately parallel to the paved portion of Beecham Road.

"12. That the defendant, Bruce L. Cameron, was driving a 1959 Pontiac Bonneville, owned by his father, north on Beecham Road on December 13, 1959, at approximately 1:40 a. m.

"13. That as defendant approached the two automobiles parked on the east side of Beecham Road, as set out above, he was blinded by the lights coming from the 1959 2-door Pontiac.

"14. That the defendant immediately applied his brakes in a 'hardly' manner.

"15. That at the time the defendant was blinded by the lights from the 2 door Pontiac, he was between 100 to 125 feet from the rear of the 1952 Chevrolet.

"16. That defendant made no conscious effort to change the direction of his vehicle.

"17. That the automobile (1959 Pontiac Bonneville) the defendant was driving left the traveled portion of the roadway and the right wheels entered on the right berm about 100 feet from the rear of the parked Chevrolet.

"18. That the Pontiac Bonneville automobile driven by the defendant continued north with the righthand wheels off the traveled portion of the roadway in a slightly northeast direction until the right front portion (3 to 4 feet) of said automobile struck the left rear of the 1952 Chevrolet.

"19. That the force of the impact drove the front of the Chevrolet into the 1959 2-door Pontiac forcing said Pontiac backwards in a northwesterly direction.

"20. That the 1959 2-door Pontiac came to rest on the west side of Beecham Road with the right rear wheel of said Pontiac on the west berm of the road and the front end of the Pontiac pointed in a southeasterly direction.

"21. That at the time the defendant was blinded by the lights of the 1959 2-door Pontiac, the speed of his automobile was approximately 45 miles per hour.

"22. That the lights on the 1959 2-door Pontiac (Murray's) were lighted at all times relevant to the accident.

"23. That either because of the fact that the hood was

raised on the Chevrolet automobile, or because the 1959 Pontiac 2 door (Murray's) was parked at a slight angle heading to the southwest, or both, the lights of said Pontiac were not visible to the defendant as he approached from the south until the automobile driven by the defendant was within 100 to 150 feet of the rear of the Chevrolet.

"24. That at the time of the accident the weather was cloudy and dark. That it was not raining.

"25. That at the time of the accident the surface of Beecham Road was dry with a few damp spots on it.

"26. That prior to the accident, other automobiles had passed the parked Pontiac and Chevrolet, but that the court is unable to determine from the record which direction said automobiles were proceeding."

The following conclusions of law were found by the trial court:

"1. The doctrine of the assured clear distance ahead does *not* apply to the facts in this case.

"2. That the defendant, Bruce L. Cameron, blinded by the lights of the 1959 2-door Pontiac (Murray's) was operating his father's Pontiac at a speed which was reasonable and proper with regard to the traffic, surface, and width of the highway under the conditions then existing.

"3. That upon being blinded by the lights of the 1959 2-door Pontiac, he reacted in a reasonable and proper manner by immediately applying the brakes on the automobile which he was driving.

"4. The fact that the wheels on the right side of the automobile which he was driving left the traveled portion of Beecham Road and the right side of the front end of said automobile struck the left rear of the 1952 Chevrolet was *not* due to any negligent operation of said automobile by him.

"5. Since it is the conclusion of the court that the defendant, Bruce L. Cameron, was free from negligence in the operation of the automobile driven by him, it is unnecessary for the court to determine if the plaintiff, Ruth L. Murray, was contributorily negligent."

We shall first give our attention to the third assignment of error in case No. 7154, namely, that the trial court erred in finding that "assured clear distance ahead" does not apply to the

facts in this case. As we view the record, it seems clear that the Chevrolet and the Murray Pontiac were parked off the traveled portion of the road.

In the pleadings, briefs and elsewhere, reference is made to the location of the two parked vehicles as "parked on the premises of Mr. and Mrs. William Flowers," or "parked on the front premises of Mr. and Mrs. William Flowers." There was also some variance in the testimony at the time of trial and prior thereto as to whether the distance from the traveled portion of the highway was one foot or four feet. As we view it, the important fact seems to us to be that neither parked automobile was on the traveled portion of the highway.

It must be borne in mind that the so-called "assured clear distance ahead" provision of the motor vehicle traffic code is a portion of Section 4511.21 of the Revised Code relating to speed, the first paragraph of which reads:

"No person shall operate a motor vehicle, trackless trolley, or streetcar in and upon the streets and highways at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, *and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead."* (Emphasis added.)

This provision of law has been referred to in many decisions of the Supreme Court of Ohio and appellate courts of this and other states. It is not an easy matter to define the exact limits of the application of this section for the reason, among others, that as each motor vehicle moves along the highway the assured clear distance is constantly changing. Other factors include daylight or darkness, foggy or cloudy weather, and clear weather, and the other conditions and circumstances relevant to this issue.

One of the early decisions touching on this important question is the case of *Smiley* v. *Arrow Spring Bed Co.* (1941), 138 Ohio St., 81, in which an exhaustive opinion was written by the late Judge Hart. As Judge Hart pointed out, the "assured clear distance ahead" provision was enacted in 1929 for the apparent reason of reversing the rule laid down in the case of

*Tresise* v. *Ashdown, Admr.*, 118 Ohio St., 307. The second paragraph of the syllabus in the *Smiley case, supra,* reads:

"2. To comply with the assured-clear-distance-ahead provision of Section 12603, General Code, the driver of a motor vehicle must not operate it at a greater speed than will permit him to bring it to a stop within the distance between his motor vehicle and a discernible object *obstructing his path or line of travel,* unless such assured clear distance ahead is, without his fault, suddenly cut down or lessened by the entrance, within such clear distance ahead and into his path or line of travel, of some obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith." (Emphasis added.)

We are impressed by the undisputed facts in this case indicating that the parked cars were not in the "path or line of travel" of Bruce Lee Cameron and that there not only was no substantial evidence that they were but, on the contrary, a complete absence of such evidence.

As we understand the law, the question as to the assured-clear-distance rule does not enter the case where there is no substantial evidence, among other things, that the object with which there was a collision was located ahead of the driver *and in his lane of travel.* It was so held by the Supreme Court of Ohio in the case of *McFadden, Admx.,* v. *Elmer C. Breuer Transportation Co.* (1952), 156 Ohio St., 430, in which the first paragraph of the syllabus reads:

"1. *The question of whether the operator of a motor vehicle was negligent in failing to comply with the 'assured-clear-distance-ahead' rule contained in Section 6307-21, General Code, is not presented to the trier of the facts where there is no substantial evidence (1) that the object with which such operator collided was located ahead of him in his lane of travel,* and (2) that such object was reasonably discernible, and (3) that the object was (a) static or stationary, or (b) moving ahead of him in the same direction as such operator, or (c) came into his lane of travel within the assured clear distance ahead at a point sufficiently distant ahead of him to have made it possible, in the exercise of ordinary care, to bring his vehicle to a stop and avoid a collision." (Emphasis added.)

In *Erdman* v. *Mestrovich* (1951), 155 Ohio St., 85, the first and second paragraphs of the syllabus are as follows:

"1. The 'assured clear distance ahead,' referred to in Section 6307-21, General Code, constantly changes as the motorist proceeds and is measured at any moment by the distance between the motorist's car and the limit of his vision ahead, or by the distance between the motorist's car and any intermediate discernible static or forward moving object in the street or highway ahead *constituting an obstruction in the motorist's path or lane of travel.*

"2. Violation of the assured-clear-distance-ahead rule consists of the operation of a motor vehicle at a greater speed than will permit the operator thereof to bring it to a stop within the assured clear distance ahead, unless such assured clear distance ahead is, without his fault, suddenly cut down or lessened by the entrance within such clear distance *and into his path or lane of travel* of an obstruction which renders him unable, in the exercise of ordinary care, to avoid colliding therewith." (Emphasis added.)

Reference also should be made to the case of *Woods* v. *Brown's Bakery* (1960), 171 Ohio St., 383, where, in the opinion by Matthias, J., at pages 386-387, the authorities on this subject are compiled and reviewed, and the *Smiley case, supra,* is cited with approval.

For the reasons above set forth, we find ourselves in agreement with the judgment of the court below that the assured-clear-distance rule has no application in this case, and the third assignment of error in case No. 7154 must be overruled.

Assignments of error Nos. 4 and 5 in case No. 7154, that the court erred in finding Bruce Lee Cameron free from negligence, likewise must be overruled, primarily for the reason that we also are of the opinion that plaintiff failed to prove any negligence whatsoever on the part of young Cameron. For example, young Murray, who testified for the plaintiffs, in his direct testimony described the driving by young Cameron as being at a normal rate of speed, not excessive, fast or reckless. His testimony reads in part as follows:

"* * * I looked out and I watched and I saw this approaching car and it was approaching at a normal rate, wasn't excessively fast or anything, reckless or anything. * * *"

Assignments of error Nos. 4 and 5 must, therefore, be overruled.

In view of the testimony as to the position of the two parked cars, that the bright lights of the Murray Pontiac were on, that there were two lighted headlights on the side of the Murray Pontiac nearest to Beecham Road, it is entirely possible and likely that, with people moving in between the cars, they could, in one position, block out entirely the lights from the headlamps, and then, by stepping aside, let it suddenly appear with a blinding effect on those in its path. Such a conclusion is possible under the testimony of young Murray, reading as follows:

"Q. Where were you working? A. We were between the two cars.

"Q. Who is 'we'? A. Ronny and I. And we just about had the second one hooked up. Ronny was hooking up the second. I was standing on the Flowers' residence, on the lawn there. And I was pretty much off to this side. For some reason I don't know to this day, I stepped out a little bit so the headlight of the Chevrolet I was driving was just about in here. * * *"

We conclude, therefore, that the sixth assignment of error is not well taken and must be overruled.

The first assignment of error is that the court below erred in finding that the defendant was blinded by the lights coming from the Murray Pontiac. For reasons already set forth, we conclude that this assignment is not well taken and must be overruled.

While we are not exactly clear what is meant by assignment of error No. 2, that the court below erred in finding that defendant applied his brakes in a "hardly" manner, we feel that, taking other testimony by Bruce Lee Cameron into account, it is clear that he intended it to mean that he applied the brakes firmly or with vigor. We conclude there was credible evidence in the record to support the conclusion reached by the trial court, and, therefore, this assignment of error must be overruled.

The remaining assignment of error in case No. 7154 is that the judgment of the court is against the manifest weight of the evidence. As has often been said, the jury or the judge sitting for the jury has the advantage in observing the demeanor of the witnesses, their candor and frankness, or the lack of it, and other factors which do not appear on a typewritten page. From

our consideration of the record, we conclude there is adequate evidence which, if believed by the court below, fully sustained the judgment by that court. This assignment of error must be overruled.

In case No. 7153, there is only one error assigned, namely, that the court below erred in holding that the defendant-appellee was free of negligence and that he was confronted with an emergency. This assignment of error is substantially the same as that set forth in assignments of error Nos. 4, 5 and 6 in case No. 7154. For the reasons heretofore set forth, this assignment of error must be overruled.

It therefore follows, in our opinion, that the seven errors assigned in case No. 7154 and the one error assigned in case No. 7153 are not well taken and must be overruled, and the judgments of the court below in each of such cases must be affirmed and the causes remanded.

*Judgments affirmed.*

TROOP, J., concurs.

DUFFEY, J., dissenting. On the record in this case, the application of the assured-clear-distance rule to a vehicle parked in a storage lane or road berm and within the public right of way is not presented. There is no evidence as to the width of the right of way on Beecham Road. A court might take judicial notice that, in general, public right of way exceeds the hard surface pavement of a county road. However, it cannot assume, in the absence of evidence, the right of way of a particular road. For this reason only, and without indicating any further opinion, I agree that assured clear distance should not be considered in this case.

As to defendant's breach of a duty of ordinary care, it is well to state again the pertinent facts. Beecham Road is straight for a considerable distance before the point of impact. There are no significant obstructions to sight and only "minor dips" in the pavement. The night was dark and cloudy. There is nothing to indicate that the visibility was poor. The Murray Chevrolet had four headlights from the Pontiac shining directly on it from the front. There is nothing in the evidence as to reflected light, although it is most difficult to believe that this

would be completely absent and invisible to an approaching vehicle. In any event, the defendant's testimony is that he was "suddenly blinded" by two headlights at about 100 to 150 feet from the Murray Chevrolet. Obviously then, two of the Pontiac's headlights shone past the Chevrolet and reached in a direct beam 100 to 150 feet down the road toward the approaching defendant's vehicle. As a matter of physical necessity, these headlights would light up the left or road side of the Chevrolet since the Pontiac was only one foot from it and virtually in front.

To accept the defendant's testimony requires a finding that despite the beams of these two lights and their reflections on the road and atmosphere, together with the reflections from the other lights on the ground, air and Chevrolet, including the light provided by his own headlights, defendant saw absolutely nothing as he approached the Chevrolet prior to the moment that he was "blinded," and further that a reasonably prudent driver could not have seen anything. To find that defendant was not negligent requires not only the acceptance of that position but the further finding that upon being "blinded" the defendant in the exercise of ordinary care could not have avoided drifting to his right off the pavement and colliding with the the parked Chevrolet some 100 to 150 feet further on. Conceding that the evidence lacks precision, I still find this factual analysis incredible.

An argument as to contributory negligence might be made as to Mrs. Murray. However, the trial court in its findings of fact and conclusions of law did not pass on contributory negligence. I cannot say on this record that Mrs. Murray was negligent as a matter of law. As to Mr. Murray's action in case No. 7153, it is for property damage to the Pontiac. Mr. Murray was not driving and was not present at the scene. He is simply the owner of the vehicle.

Accordingly, I believe the judgment should be reversed.