## Commonwealth v. Glenn

*Joseph J. Nelson*, for Commonwealth.
*Carl M. Moses*, for defendant.

ACKER, J., July 23, 1970.—Defendant has been convicted by a jury of involuntary manslaughter through the instrumentality of a pickup truck. The victim was a passenger in the vehicle. Defendant has moved for a new trial and has filed a motion in arrest of judgment. The motion for a new trial must be granted. The motion in arrest of judgment is denied. Although numerous contentions are advanced by defendant, one has merit. This court instructed the jury that the assured clear distance ahead rule was applicable to the striking of a tree 15 feet from the hard surface of the highway and beyond the berm. This squarely brings us to the issue of whether the assured clear distance ahead rule is applicable to standing objects which would be plainly in view off the highway. The answer must be that it does not.

The assured clear distance ahead rule was established as a common-law principle and is imbedded in The Vehicle Code by statute: Griffith v. Weiner, 373 Pa. 184, 95 A. 2d 517 (1953); Metro v. Long Transportation Company, 387 Pa. 354, 127 A. 2d 716 (1956).

As stated in The Vehicle Code, ". . . no person shall drive any vehicle, *upon a highway* at such a speed as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance

ahead": Act of April 29, 1959, P. L. 58, sec. 1002, as amended, 75 PS § 1002. This statute has been called by our courts "the only safe rule": Griffith v. Weiner, supra, page 187. It has been applied to vehicles driven "into obstructions on the highway, regardless of the negligence of the person who created the hazard": Griffith v. Weiner, supra, p. 187; Metro v. Long Transportation Company, supra: Rich v. Petersen Truck Lines, Inc., 357 Pa. 318, 321-22, 53 A. 2d 725 (1947).

In Lauerman v. Strickler, 141 Pa. Superior Ct. 240, 14 A. 2d 608 (1940), the court quotes Stark v. Fullerton Trucking Company, 318 Pa. 541, 544, 179 Atl. 84, 86 (1935): "This implies that the driver will always be carefully watching so much of the road as is included within that 'assured clear distance ahead.' "

In the instant case, defendant and decedent were riding in the cab of a pickup truck at about 1:15 a.m. on September 21, 1969, in the Borough of Stoneboro. Defendant drove through a stop sign at an intersection where the Chief of Police and a part-time police officer were parked in a police car. At this point, the red Ford pickup truck was geared down and the motor gunned. The officers were afraid the vehicle might tip over. As the vehicle proceeded on, it appeared that it veered over to the left side of the road a part of the time and it looked as if it were fish-tailing or swerving back and forth. The officers could not safely come abreast of it because of the fish-tailing action. At the next intersection, the vehicle again failed to stop and went around the corner on the wrong side then heading towards Mercer on Route No. 62. The police officers did not attempt to stop the vehicle for fear that it would wreck when alerted to the police being behind them, but they traveled 200 to 300 feet behind the truck as it continued to accelerate to 65 m.p.h. The road had ahead a slight curve followed by two severe

curves. Chief of Police Ford noted that defendant was traveling at 65 m.p.h. as he went into the first bad curve, but the chief decelerated his own vehicle to 50 m.p.h. At the second curve, he saw leaves and dust flying through the air for about 200 feet and the truck upside down with one wheel still turning. The marks of defendant's vehicle went off the berm and straight for a tree, the total distance estimated between 200 and 300 feet. The tree was 15 feet off the hard surface of the road. It appeared that defendant simply was unable to negotiate the turn and ran into the tree. It was more than enough evidence to support the conviction.

We are convinced that the charge upon the assured clear distance ahead rule, although logical in its application, was basic and fundamental error. Here, defendant did protect the record, both at the time of the charge and in his motion for new trial. Even if he had not, however, we believe a new trial would be required under the recent authority of Commonwealth v. Banks, 216 Pa. Superior Ct. 405 (1970). It is true that the assured clear distance ahead rule is applicable to curves in the road as well as limited visibility due to storms, darkness, fog or other conditions: Hutchinson v. Follmer Trucking Company, 333 Pa. 424, 5 A. 2d 182 (1939): Weibel v. Ferguson, 342 Pa. 113, 19 A. 2d 357 (1941). In Haines v. Dulaney, 424 Pa. 608, 227 A. 2d 625 (1967), the rule was applicable to a motor vehicle operator who drove around a sharp turn in a highway and ran into a standing truck on the highway.

At night, as in the instant case, the rule is interpreted as driving at such a speed as to be able to stop within the scope of the headlight: Enfield v. Stout, 400 Pa. 6, 161 A. 2d 22 (1960).[1]

---

[1] A review of the meaning of the rule and the various exceptions is contained in McElroy v. Rozzi, 194 Pa. Superior Ct. 184, 166 A. 2d 331 (1960).

Our research has failed to disclose a Pennsylvania case where the exact issue here presented was resolved. In Masters v. Alexander, 424 Pa. 65, 225 A. 2d 905 (1967), an opinion by Mr. Justice Musmanno, in which five Justices concurred in the result, there is a discussion of whether the berm of a road is to be included within the definition of the highway. There, a 12-year-old was struck while riding a bicycle on the shoulder of a highway. Discussing the grounds of negligence of defendant, the assured clear distance ahead rule as defined in Enfield v. Stout, supra, was used. However, in discussing the duty of a bicycle operator "upon a highway" to be equipped with a lighted lamp, section 801 of The Vehicle Code was held not to apply in that the minor was on the berm. Justice Musmanno, stated: ". . . In general lay language it probably is, but, in the application of a statute, where a disadvantage or harm may result from a supposed infraction of a law, the words must be interpreted strictly. In that respect, a berm is not part of the highway . . . A berm, although not an obstructive barrier, is a distinctive visual boundary to the highway . . ." The same reasoning is applicable to the statute dealing with the assured clear distance ahead for it is confined to conduct "upon a highway": 75 PS §1002.

In looking to other jurisdictions, the only case found is Murrey v. Cameron, 119 Ohio App. 93, 197 N. E. 2d 207 (1963), the Court of Appeals of Ohio, Franklin County. There, an automobile was parked off the main traveled portion of the road, disabled because of battery difficulty and in the front yard of a residence. It was two to four feet from the traveled portion of the highway. One of the young occupants of the car called to his mother for help. She arrived at the scene and parked her vehicle in front of the disabled vehicle so that battery cables could be run from the one vehicle

to the other. Both vehicles were parallel to the highway. Defendant's vehicle veered towards the two parked vehicles and struck the left rear corner of one of them. The applicable section of the Ohio Vehicle Code is similar to that in Pennsylvania: "No person shall drive any motor vehicle . . . in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead." The Court of Appeals of Ohio held that the assured clear distance ahead rule had no application. We agree with that conclusion for several reasons. First, the language of the rule itself states that it deals with the conduct "upon a highway." Two, to require a person to stop within the assured clear distance ahead presupposes that the surface is visible through the use of the headlights and would remain reasonably constant in character. In this case, there was evidence that there was a small ditch approximately two feet in depth down which the vehicle traveled at least in part. Three, defendant is charged with a misdemeanor which can result in three years imprisonment and/or a $2,000 fine. As such, the statute must be strictly construed and not extended beyond its language.

One additional contention must be disposed of. Must this matter be returned to the justice of the peace for a further preliminary hearing? This issue was previously presented to this court and dismissed in an opinion by Stranahan, P. J. Testimony was taken. It arose through a petition to remit the matter for a preliminary hearing in conformity with Pennsylvania Rules of Criminal Procedure 116 and 117 and article I, sec. 9, of the Pennsylvania Constitution. Findings of fact were concluded by the court. Among them was that the justice of the peace advised defendant on December 2, 1969, that he had the right to have a preliminary hearing or waive the same. Defendant ex-

ecuted a written statement attached to the criminal complaint waiving the preliminary hearing and consenting to be bound over to court. The justice of the peace did inform defendant that if he waived the hearing, it would not be held at that time, but that the matter would be submitted to the District Attorney of Mercer County at which time there would be a further hearing on the case. Defendant was unrepresented at the time of the waiver. This court concluded that defendant's rights have not been prejudiced and that he had explained to him his right to a preliminary hearing. Following the trial of this case on July 22, 1970, the United States Supreme Court decided Coleman v. Alabama, 399 U. S. 1 (1970). This case held that a preliminary hearing was a critical stage of the proceedings and that defendant had the right to have counsel present. There is no indication in the opinion that it is retroactive. The court then advanced four reasons for requiring counsel. A review of these reasons clearly indicates that all of the objectives of the Coleman case have been satisfied prior to a retrial of this case. First, counsel might persuade the magistrate not to bind defendant over by scope of questioning which would show that no offense had been committed or that there was not probable cause to believe the defendant committed it. As previously noted in this opinion, there was more than adequate testimony to convict defendant and the magistrate would be in grievous error not to bind the case over. Second, that counsel might fashion a vital impeachment tool for use in crossexamination of prosecution's witnesses later on. Crossexamination has been permitted in the trial of this case and the record can be used to impeach witnesses at the time of the new trial. Third, counsel can discover the State's case to a large degree. Defendant is in a better position in that he has heard the Commonwealth's entire case and not just

such witnesses as the Commonwealth might select to establish a prima facie case at a preliminary hearing. Fourth, defendant may obtain bail or an early psychiatric examination. Defendant is and continues on bail. There is no indication whatsoever of a psychiatric condition, nor has there ever been any suggestion by defendant or his counsel concerning this subject.

In addition, defendant, by waiting until after the return of the grand jury, has waived irregularities in the proceedings before the magistrate: Commonwealth v. Weinstein, 177 Pa. Superior Ct. 1, 109 A. 2d 235 (1954). It has long been held that a defendant in a criminal case may not raise a question touching upon the legality of his arrest or the regularity of the proceedings before the magistrate after an indictment is found. To the same effect, Commonwealth v. Banks, 203 Pa. Superior Ct. 198, 199 A. 2d 473 (1964).

Therefore, this court reaffirms the previous opinion denying the return of the case to the justice of the peace.

## ORDER

And now, July 3, 1970, defendant's motion for a new trial is granted and defendant's motion in arrest of judgment is denied.