OPINION
This is an accelerated appeal from the Portage County Municipal Court, Ravenna Division. Appellant, Jacob Klein, appeals his conviction under R.C. 4511.21(A) for failure to stop his vehicle within the assured clear distance.
Appellant was issued a citation on February 5, 1995, and the trial was conducted on May 2, 1995. At trial, appellant testified that on the morning[1] of February 5, 1995, he was driving westbound on the Ohio Turnpike from Youngstown, Ohio to Cleveland Hopkins Airport, accompanied by his wife and son. At the time appellant drove onto the turnpike, "[t]he weather conditions were — they were not good but they were not the condition they were when I reached the point of the accident. It was snowing and stopped snowing and the wind was blowing and stopped blowing."
After he passed Exit 15, and approximately half-way between the service plaza and Exit 14, appellant stated that he proceeded to follow a Buick automobile, and that he was traveling between ten and fifteen car lengths behind that vehicle. Appellant related that he was able to see between two and four hundred feet in front of his Cadillac at that point. Appellant said that the Buick exited the turnpike at the service plaza, and that he had slowed down at that point.
Appellant stated that after he passed the service plaza, and upon reaching the bridge, "the wind blew, the snow came up and I would say the visibility got down to zero and whatever the mile marker that the accident occurred my air bags exploded. I realized I ran [sic] into the back end of the tractor trailer." Appellant said that the visibility was reduced so that "[i]f my car had a hood ornament I probably could not have seen it." He confirmed that he had not experienced any type of "white-out" condition until that point in time.
Appellant testified that when he gave his statement to Trooper William Dean, he told the officer that his speed was between fifty-five and sixty m.p.h. Appellant stated that after reviewing the situation, he believed that he was traveling below the speed limit because the damage was not as extensive as it had initially appeared, "and the value of the automobile to the matter of repairs was not that great."
Appellant further testified that the truck did not have its tail lights illuminated at the time of the accident. Appellant's son, Jeffrey Klein, corroborated appellant's testimony concerning the truck's tail lights.
On cross-examination, appellant admitted that the roads were snow covered at some point while he was following the Buick, but averred that "we had gone through patches of blue sky and were just cleared up completely[.]" Appellant reiterated that "[w]hen I passed the service plaza I could see the service plaza without any problem, completely. When I got to that bridge it was like a gust of wind came up and the visibility immediately came down to zero."
Trooper Dean testified that on the morning of February 5, 1995, the turnpike was clear in most areas, "but in the area from around 202 to the 194 mile post it was a heavy snow and white-out conditions." According to the officer, the "[r]oads were snow covered mostly in that area and other areas they tended to be wet to dry." Trooper Dean estimated that appellant was approximately four and one-half to five miles into the heavy "white-out" snow. Trooper Dean stated that appellant related in his statement that it was snowing very hard and blowing, and that it was almost a "white-out" at the time of the accident.
In responding to appellant's accident, Trooper Dean estimated that he was driving "about 35 to 40 miles an hour with my red lights on" and felt that that speed "was a little above safe I would think at that time." Trooper Dean cited appellant because:
 "[H]e stated his speed at 60 miles an hour, 55 to 60, which was well in excess of a safe speed for the road conditions at the time [that] he struck the rear end of the vehicle. He failed — at that time it would seem to me he wasn't sure whether he had time to apply his brakes at the speed he was going and the distance it was visible. He had about one second from the time he saw the vehicle and the time he hit it."
Trooper Dean related that when he arrived at the scene, he observed that "there was a * * * white Cadillac in the median badly damaged to the front end[.]" The tractor trailer had been moved to the right berm. On cross-examination, Trooper Dean stated that after he was at the accident scene, the truck's tail lights and flashing lights were illuminated, and there was some snow covering the lights. The officer also stated that appellant, his son, and his wife told the officer that they did not believe that the truck had its lights illuminated at the time of the accident.
The trial court found appellant guilty of violating R.C.4511.21(A), reasoning that a driver is supposed to be operating the vehicle so that he or she can stop under the conditions obtaining. The court found that the conditions were "terrible[,]" that the question of the truck's lights was not important, and finally determined that "[t]he question is should they have seen it or should their speed have been such that they didn't hit it." The court assessed a fine of $25 plus court costs to appellant.
Appellant timely appealed and submits the following assignments of error:
 "[1.] The trial court erred to the prejudice of the [appellant] when it failed to recognize that the white-out conditions created a situation where an intervening cause prevented the [appellant] from being able to exercise ordinary react [sic] care to avoid the collision.
 "[2.] The court erred by failing to recognize that in the Smiley case and subsequent cases by the Ohio Supreme Court, the object must be reasonably [discernible] prior to attaching responsibility to the [appellant] herein. Such [discernibility] did not exist in this case."
Because the assignments are interrelated, we will address them together. The trial court, after hearing the testimony of Trooper Dean, concluded that appellant's speed was unreasonable in light of the terrible conditions at the time and was, consequently, the proximate cause of the accident. Appellant argues that the sudden emergency exception is applicable, and contends that the suddenness of the occurrence of the "white-out" constitutes a valid legal excuse for his not discerning the truck in sufficient time to stop before hitting it. Upon review, we agree with the trial court's conclusion.
The Supreme Court of Ohio stated in Pond v. Leslein (1995),72 Ohio St.3d 50, 52:
 "R.C. 4511.21(A) states that `no person shall drive any motor vehicle (* * *) in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.' Ohio case law has consistently held that a person violates the assured clear distance ahead statute if `there is evidence that the driver collided with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible.' Blair v. Goff-Kirby Co. (1976), 49 Ohio St.2d 5, 7 * * * (citing McFadden v. Elmer C. Breuer Transp. Co. [1952], 156 Ohio St. 430
* * *). See, also, Tomlinson v. Cincinnati (1983), 4 Ohio St.3d 66, 69 * * *." (Parallel citations omitted.)
This court recently stated in Tutoki v. Tutoki (May 9, 1997), Trumbull App. No. 96-T-5490, unreported, at 4-5:
 "Pursuant to R.C. 4511.21(A), appellee, as the driver of a motor vehicle, had the duty to drive at a reasonable and proper speed for the traffic, surface, width of the street, and other conditions. Whether a driver's speed is excessive or unreasonable under the circumstances is a question of fact. Columbus v. Cantwell (May 14, 1981), Franklin App. No. 80AP-915, unreported.
* * *
 "A sudden emergency arises when one is confronted by a sudden or unexpected emergency which is not a result of any fault or negligence on that person's part or any circumstances under that person's control." (Emphasis added.)
"[A] driver who has failed to comply with R.C. 4511.21 may excuse his failure by showing that without his fault, and because of circumstances over which he had no control, compliance with the statute was rendered impossible. Smiley v. Spring Bed Co. (1941),138 Ohio St. 81 * * *." (Parallel citation omitted and emphasis added.) Pearson v. Lacy (Apr. 30, 1980), Hamilton App. No. C-790197, unreported, at 4, 1980 Ohio App. LEXIS 10564. In our opinion, the sudden emergency exception is not applicable in the instant appeal.
Appellant gave two different versions of his driving speed: (1) between fifty-five and sixty m.p.h., as contained in his statement to Officer Dean; and (2) "below the speed limit" as stated at trial. "[G]enerally matters of credibility are best left to the trier of fact — the judge in this case — as he is in a better position to view a witness's demeanor. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus." Statev. Howdyshell (Aug. 15, 1997), Ashtabula App. No. 96-A-0064, unreported, at 5.
While the trial court did not make an explicit factual finding regarding appellant's speed, the court implicitly determined that appellant was driving unreasonably fast in view of the existing road and weather conditions. We believe the mere fact that appellant had, by Trooper Dean's estimation, only about one second to apply his brakes upon seeing the truck is a very strong indicator that appellant's speed, whether fifty-five m.p.h., sixty m.p.h., or below the speed limit was, nevertheless, unreasonably fast for the current conditions at that time. Supporting this conclusion is the fact that appellant's wife, who was sitting without a seat belt in the back seat, suffered minor injuries upon impact, and the front end of appellant's vehicle suffered major damage in Trooper Dean's opinion. Thus, there is sufficient competent, credible evidence to indicate that this accident was not simply a low-speed "fender-bender."
Turning to the issue of the obfuscation of the tractor trailer truck caused by the sudden "white-out" condition, "[t]here is some indication * * * that a sudden emergency that will excuse compliance with the assured-clear-distance-ahead requirement must consist of the entry into the driver's path within his assured clear distance ahead of an object such as a person or vehicle with which he cannot avoid colliding." (Emphasis added.) Belcher v.Lindinger (Oct. 21, 1986), Franklin App. No. 85 AP-899, unreported, at 4, 1986 WL 12905, citing Francis v. Bieber (1967),10 Ohio St.2d 65.
"Skidding upon a wet or icy roadway due to bad road conditions alone does not excuse a driver from operating his vehicle upon the right side of the roadway as required by Sections 4511.25 and4511.26, Revised Code." Oechsle v. Hart (1967), 12 Ohio St.2d 29, paragraph two of the syllabus. "When a person drives on an icy or snowy highway, he assumes the duty of keeping his vehicle under control despite the adverse condition of the highway." OhioCas. Ins. Co. v. Adkins (Nov. 16, 1978), Franklin App. No. 78AP-481, unreported, at 10, 1978 Ohio App. LEXIS 9954.
In an earlier decision from Geauga County, the then Seventh District Court of Appeals stated that "[t]he existence of snow and ice on a roadway or the difficulties of driving through a snow storm do not constitute a legal excuse for a violation of a statute which contains a specific requirement." Mut. Benefit Ins.Co. v. Reiss (1961), 88 Ohio Law Abs. 450, 452. "The authorities uniformly hold that the operator of a motor vehicle blinded by lights, fog, mist or any other atmospheric condition may not be excused for any negligent act or failure to use ordinary care."Parnell v. Bell (1962), 117 Ohio App. 125, 129.
Although the "white-out" that obscured appellant's view of the truck arguably arose quickly, we cannot say that it aroseunexpectedly. According to Trooper Dean's testimony, and by appellant's own admission, the roads in the vicinity of the accident were covered with snow. Furthermore, appellant conceded that he had experienced intermittent periods of snow and/or blowing wind earlier in his journey. Logic would dictate that a reasonable driver would adjust his speed downward in anticipation of the possible re-occurrence of snow and/or blowing wind creating a "white-out" which condition, by its very nature, reduces a driver's visibility quickly, extensively, and without warning. See Roszman v. Sammett (1969), 20 Ohio App.2d 255, 257-258. Thus, in our view, it was not adequate that appellant travel at a speed sufficiently safe for the periodic clear conditions, as was the situation when he passed the safety plaza. Instead, appellant had an obligation to drive at a speed at which he would have been able to have maintained his ability to stop during the intermittent, inclement weather conditions.
We find compelling the reasoning stated in Woods v. Brown'sBakery (1960), 171 Ohio St. 383. In that case, the driver had encountered several heavy pockets of fog along his regular route to work. When the driver encountered yet another pocket of fog, his speed was approximately forty m.p.h., and his visibility was twenty to thirty feet ahead. The driver in that case took his foot from the accelerator, and coasted without braking toward the intersection. At the intersection, the driver struck broadside a large truck. The Supreme Court of Ohio stated:
 "`(* * *) Fog is fog and its obscurative qualities are known to all individuals who possess even the slight amount of intelligence legally required to qualify one to drive an automobile on the public highways. When plaintiff drove his car into a fog bank which hid a truck from his view, he simply spurned prudence and relied on chance. That chance failed him is his misfortune, not defendant's fault. * * *'
* * *
 * * * If a person driving in a fog can only see 30 feet he must drive so that he can stop within 30 feet. If he is driving at such a speed that he cannot stop within that distance, then he is violating the law.'" (Citations omitted.) Id. at 389-390, 390-391.
Consequently, we reject appellant's contention that the white-out condition which obscured his visibility of the truck was an intervening cause that cut-off appellant's obligation to drive at a reasonably safe speed for the then existing road and weather conditions in their totality. Regarding the effect of sudden "white-out" conditions on a driver's ability to maintain the assured clear distance, we do not articulate an absolute rule of law that would categorically apply under all circumstances. Rather, we simply hold that under the particular circumstances of this case, the trial court was justified in finding appellant guilty of failing to stop within the assured clear distance due to his excessive speed under the circumstances. In summary, appellant's first and second assignments of error are without merit.
Accordingly, appellant's assignments of error are without merit. The judgment of the Portage County Municipal Court is affirmed.
DONALD R. FORD, PRESIDING JUDGE.
CHRISTLEY, J. and NADER, J. concur.
[1] The accident occurred at 8:52 a.m.